CARSON et al. v. THREE STATES LUMBER CO.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1906.)

No. 1,536.

JUDGMENTS—DECISIONS OF STATE COURTS—RES JUDICATA.

Plaintiffs, having conveyed the timber on certain land in 1893–94, without fixing a time for the removal thereof, instituted a suit in 1901 against defendant which had acquired such timber rights to restrain it

from removing the timber, on the theory that defendant was only entitled to a reasonable time to remove the same, which had then elapsed. The bill prayed that, in case a reasonable time had not elapsed, the court should fix a time within which the timber should be removed. The state Supreme Court, reversing a decree sustaining complainant's contention that a reasonable time had elapsed, *held* that, under the evidence disclosed, a reasonable time would not elapse until November 1, 1903, and dismissed complainant's bill. *Held* that, though the decision fixing the time was contained only in the state court's opinion and not in its decree, it was, nevertheless, within the issues tendered by the bill, and was res judicata of complainant's right to recover the value of timber cut from the land by defendant prior to the date so fixed.

[Ed. Note.—Conclusiveness of judgment as between state and federal. courts, see Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468.]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

For opinion below, see 142 Fed. 893.

B. Pierson, for plaintiffs in error.

W. A. Percy, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. This was an action brought November 6, 1905, by the plaintiffs in error against the defendant in error, to recover the value of the merchantable timber growing on a certain tract of land in Lake county, Tenn., cut and removed therefrom by the latter between September 1, 1902, and November 1, 1903, alleged to be $65,000. The defendant claimed title thereto through the plaintiffs. By deeds dated, respectively, February 14, 1893, and July 5, 1894, plaintiffs, being then the owners of the land and timber both, conveyed the latter to certain vendees, and title thereto, prior to its being cut and removed, had passed from said vendees, mediately, to the defendant by proper deeds of conveyance. The deeds from plaintiffs contained no provision as to the time in which the timber should be cut and removed. They were silent on the subject of its being cut and removed. Plaintiffs, notwithstanding their deeds, claimed title to the timber at the time it was cut and removed, and in this way: It was an implied condition of them that the timber was to be cut and removed in a reasonable time. By September 1, 1902, after which the cutting and removal began, a reasonable time had elapsed. Upon the lapse thereof the title to the timber reverted to plaintiffs.

The declaration, besides setting forth plaintiffs' claim of title to the timber, graciously alleged facts that might be claimed by defendant to operate against their claim. Those facts are these: May 11, 1901, plaintiffs brought a suit in equity in the chancery court of Lake county, Tenn., against defendant. At that time the timber had not been touched. In the bill plaintiffs asserted title thereto on the ground that a reasonable time for it to be cut and removed had then elapsed and prayed an injunction against defendant, restraining it from cutting and removing the timber. They prayed also that, "if the complainants should be mistaken as to the defendants having had a reasonable

time in which to remove the said timber from the said land, then will the court fix and determine what will be a reasonable time in which they must remove the timber." The defendant answered, denying that a reasonable time had then elapsed, and claiming the right to cut and remove the timber whenever it pleased. Proof was taken and upon submission of the cause. Said chancery court rendered a decree upholding plaintiffs' contention and enjoining defendant from cutting and removing the timber. An appeal was taken from that decree by defendant to the Supreme Court of Tennessee. That court on May 24, 1902, handed down an opinion holding that the decree of the lower court should be reversed, and thereupon entered a decree dismissing the plaintiffs' bill. The opinion is reported in 108 Tenn. 681, 69 S. W. 320. It was handed down by Judge Beard on behalf of the court. In it, after considering the question as to whether those claiming under plaintiffs' deeds had an unlimited or only a reasonable time in which to cut and remove the timber, and holding the latter and noting, but passing by the question as to the effect on the title thereto of their failure to cut and remove it in such time, he concluded as follows:

"We are satisfied, after a careful examination of all the evidence in the record, a reasonable time within which the grantees and their assigns could remove the timber covered by the contract had not expired when the present bill was filed. It is estimated that in 1893 there was standing on the land from 16,000,000 to 18,000,000 feet of timber. The land, or the greater part of it, was low and swampy, and subject to overflow from the Mississippi river. At the time of the making of the contract, and until their sale in 1896 to Fitzhugh, Hull and Polhemus looked alone to periodic overflows to float out the logs they cut. In the winter of 1893–94 they succeeded in getting out about 1,000,000 feet, and, in anticipation of having another overflow, they had cut additionally 2,000,000 or 3,000,000 feet, but were not able to get it out on account of its failure. Mr. Hull says this timber was lost to his firm, and lying on the ground, worm-eaten and worthless, when they made their sale in 1896. The evidence shows that to haul this timber to the Mississippi river would have entailed a heavy loss to these parties, and at the time they were operating floating logs in an overflow was regarded as the only feasible plan of getting them to market. Since then tramways and steel roads for that purpose have come into use. In 1898 the Three States Lumber Company contracted with their codefendant Peck to erect a sawmill near the land, and cut the trees remaining on it, and convert them into lumber, and when this bill was filed he was constructing a steam railroad into the body of this timber, and was actively engaged in fulfilling his contract. Many witnesses qualify as persons having long and large experience in such work, and their estimates of a reasonable time for removing timber under this contract was from 6 to 13 years. After weighing all the testimony, we have concluded that a period of 10 years from the 1st of November, 1893—this date being midway between the two deeds—is, in view of all the conditions developed in the evidence as existing or likely to exist, a reasonable period. There, however, will be excluded the time which has been lost to the defendants by reason of the pendency of the injunction in this case. This bill is therefore dismissed, at cost of complainants."

It was held, therefore, not only that a reasonable time had not elapsed when the bill was filed, but also that 10 years from November 1, 1893—i. e., by November 1, 1903—was a reasonable time. In this latter particular the prayer of the bill that the court in the event it should hold that a reasonable time had not elapsed when the bill was filed should fix and determine what was a reasonable time was an-

swered.· The decree entered by said court pursuant to said opinion is in these words:

"This cause came on to be heard upon the transcript of the record from the chancery court of Lake county, Tennessee, and it appearing to this court that in the decree of the chancellor there is manifest error, this court being of the opinion that complainants' bill should have been dismissed, it is therefore ordered, adjudged, and decreed by the court that the decree of the court below be reversed and the bill dismissed, and that the defendant company have and recover of complainants, S. B. Carson and wife and Mat Pate, and J. B. Carson and G. F. Carson, sureties on prosecution and injunction bonds, all the costs of this court for which let execution issue."

The plaintiffs claimed that, notwithstanding these facts, they were the owners of the timber and entitled to recover its value. They alleged them in the declaration in order that their effect might be raised by and determined by demurrer. The defendant demurred to the declaration, and the lower court, upon consideration of the demurrer, sustained it and dismissed the declaration. It is to this judgment that the writ of error herein is taken.

The writ presents for determination by this court the question as to the effect of said facts on plaintiffs' claim to said timber. By reason of them were or not plaintiffs estopped to assert that they had title to the timber at the time it was cut and removed? Is or not it res judicata that at that time a reasonable time had not elapsed in which to cut and remove it? It is certain that the Supreme Court of Tennessee in its opinion in said former suit held that a reasonable time would elapse by that time, and not until then. Upon what ground, if any, is it to be said that that holding is not res judicata?

Had the bill contained no prayer that the court, if it held that a reasonable time had not elapsed when the bill was filed, should fix and determine what was a reasonable time, it might be claimed, with some plausibility at least, that such holding was not res judicata. In that contingency the holding would have gone beyond the requirements of the case. It would have required no more than that it should be determined whether a reasonable time had elapsed when the bill was filed. At most, a holding as to what was a reasonable time would have been incidental merely to the holding that a reasonable time had not then elapsed.

It cannot be urged that said holding is not res judicata on the ground that, even though plaintiffs prayed for a determination of what was a reasonable time, they were not entitled to any such determination. It it not certain that they were not entitled to it. Possibly a vendor of growing timber under circumstances such as existed with reference to the timber in question at the time said suit was brought may, before a reasonable time has elapsed, have a right to bring a suit against his vendee or subvendee to have it determined what is a reasonable time in which to cut and remove the timber. His right to do so may come within the second class of the fourth group of equitable remedies pointed out in Pomeroy on Equity Jurisprudence, vol. 5, § 7, characterized in section 5 as "suits by which some general right either legal or equitable is established." But it is not necessary for us to say whether plaintiffs were entitled to any such determination. The defendants did not

claim that they were not entitled thereto, but litigated the question with them as to what was a reasonable time. The holding by the Supreme Court of Tennessee on the subject was not void. It cannot be claimed, therefore, that said holding is not res judicata on this ground. Plaintiffs in error do not so claim. The sole ground upon which they claim that said holding is not res judicata is that it is contained in the opinion only, and not embraced in the decree. The terms of the decree are limited to a dismissal of the bill. The necessities of this case do not require that we should consider this position on principle. It is disposed of by a decision which is controlling upon us. That decision was by the Supreme Court of Tennessee. It is State v. Bank of Commerce, 96 Tenn. 591, 36 S. W. 719. An irrevocable provision in the charter of the Bank of Commerce, a Tennessee corporation doing business in Memphis, Shelby county, Tenn., was to the effect that it should pay a certain specific tax on its shares of stock, and that such tax should be in lieu of all other taxes. The bank claimed that by virtue of this provision it was exempt from the payment of general or ad valorem taxes on its capital stock or surplus, and that its shareholders were exempt from payment of such taxes on their shares of stock. The state brought separate suits for the use of the city of Memphis and the county of Shelby against the bank and its shareholders, the latter by consent being represented by one of their number, in which it sought to recover ad valorem taxes for certain years on either the capital stock or the shares thereof; and, in any event, on the surplus. These suits were brought in the chancery court for Shelby county. That court held that the exemption covered all these taxes and dismissed the bill. On appeal to the Supreme Court of Tennessee that court held that it covered only the taxes on the capital stock, and did not cover those on the shares of stock or surplus. State v. Bank of Commerce, 95 Tenn. 234, 31 S. W. 993. The decree entered pursuant to the opinion was that the shareholders should pay the taxes sought to be recovered on the shares of capital stock, and the bank those sought to be recovered on its surplus. Nothing was said in the decree as to the capital stock not being liable to the taxes sought to be recovered on it. The case was taken on error to the Supreme Court of the United States by the shareholders and the bank. That court held that the exemption was limited to the shares of stock, and did not cover either the capital stock or surplus. It therefore reversed the decree of the Supreme Court of Tennessee as to the shareholders, and affirmed it as to the bank in so far as the surplus was concerned. It took no action as to said court's holding in regard to the capital stock, because so much of its holding had not been brought there on error and could not have been so brought. Bank of Commerce v. Tennessee, 161 U. S. 134, 16 Sup. Ct. 456, 40 L. Ed. 645.

On the return of the case to the Supreme Court of Tennessee, the state, on behalf of the city and county, moved that court for a decree against the bank for ad valorem taxes on its capital stock. This motion was denied notwithstanding it had been held by the Supreme Court of the United States that the capital stock was liable thereto and its own decree was silent on the subject. As to the decree being silent, Judge Gilham said:

·"In the decree no reference is made to the capital stock, nor does it in terms adjudicate that the capital stock is not subject to general or ad volorem taxation; but the opinion there delivered goes fully into this question, and the court undoubtedly held that the capital stock was not subject to general taxation."

It did so because it had so held in its opinion. Judge Gilham said:

"The principal questions now raised are: (1) Was the liability of the capital stock to general taxation by this court at the last term adjudicated? (2) If so, can we now readjudicate that question, and tax the capital stock? The decree is silent on the subject, but the opinion is full and clear. No one can read the opinion without understanding that this was one of the leading questions debated, considered, and by the court decided. In Fowlkes v. State, 82 Tenn. 19, this court, Judge Cooper delivering the opinion, has said: 'And even if the presumption, as stated by the referees, was that the dismissal was on the merits,. if the record leaves the matter in doubt, this court may look to the opinion of the court then delivered, which is also a record, to clear up the doubt.' The Supreme Court of the United States in a recent case (In re Sanford Fork & Tool Co., 160 U. S. 256, 16 Sup. Ct. 291, 40 L. Ed. 414) say that the opinion delivered by the court may be consulted to ascertain what was intended by its mandate. Upon authority we think it clear that we may look to the opinion, in connection with the decree, to ascertain what was intended to be and was by the court decided. These suits were instituted to obtain a construction of the bank's charter and to settle the question whether the charter tax was on the capital stock or on the shares of stock in the hands of the shareholders, and to collect the general tax from the one or the other, as the court might construe its charter and locate the charter tax. ·The exemption of the capital stock from ad valorem taxation was therefore necessarily involved, and was a vital issue of the case. We understand it to be well settled that all the issues which might have been raised and litigated are concluded the same as if they had been directly adjudicated and included in the judgment or decree. Lindsley v. Thompson, 1 Tenn. Ch. 272; 21 Am. & Eng. Enc. Law, 216. We need not, however, rest our opinion on this doctrine; for, in the present case, the very question was litigated both in the court below and in this court. We are of the opinion, and therefore hold, that the decree of the last term, construed in connection with the opinion, adjudged that the capital stock of the Bank of Commerce was not subject to general taxation."

We gather from this decision that resort may be had to an opinion of the Supreme Court of Tennessee, not only to ascertain the reasons for the decree entered pursuant thereto, but also what has been decreed. In view of this decision, there can be no doubt that, if the action below had been brought in the state court of appropriate jurisdiction, the holding of the Supreme Court of Tennessee in the former suit as to what was a reasonable time in which to cut and remove the timber in a certain time would have been held by the state court to have been res judicata. If it was res judicata there, it is res judicata here.

In the case of Union & Planters' Bank v. Memphis, 189 U. S. 72, 23 Sup. Ct. 604, 47 L. Ed. 712, Chief Justice Fuller, affirming this court in same case reported 111 Fed. 561, 49 C. C. A. 455, said:

"What effect a judgment of a state court shall have as res judicata is a question of state or local law."

But, besides this, there is room to hold that the Supreme Court of the United States was of the same opinion as the Supreme Court of Tennessee as to the point decided in the case of State v. Bank of Commerce, 96 Tenn. 591, 36 S. W. 719. The record of the case of State v. Bank

of Commerce, 95 Tenn. 234, 31 S. W. 993, when before it in Bank of Commerce v. State, 161 U. S. 134, 16 Sup. Ct. 456, 40 L. Ed. 645, showed that the holding of the Supreme Court of Tennessee that the capital of the bank was not liable to the tax sought to be recovered was in its opinion and not in its decree, and yet it was recognized that it was binding on the city and county, and by virtue thereof and its holding both the capital stock and the shares of capital stock for the years in question would escape taxation. Mr. Justice Peckham said:

"We cannot, therefore, review the decision of the state court allowing the claim of exemption from general taxation of the capital stock of the bank, although the consequence is that in these cases both the capital stock and the shares of stock thereof in the hands of the shareholders escape all taxation other than the charter tax."

In thus limiting the consideration of the point made on behalf of plaintiff in error to this decision of the Supreme Court of Tennessee, with such support as it has from this remark of Mr. Justice Peckham, we would not be understood as intimating that we have any doubt on the subject on principle. This decision relieves us of the necessity of considering the matter on principle, or searching for decisions of other jurisdictions covering the question as to how far resort may be had to the opinion of an appellate court to determine what it has decreed or adjudged, or as to whether a holding in such an opinion not covered by the decree is res judicata.

The judgment of the lower court is affirmed.