## Wytheville.

## JOHNSON AND OTHERS V. POWHATAN MINING COMPANY, INC., AND OTHERS.

### June 10, 1920.

1. PARTIES—*Judgments and Decrees—Revival of Action.*—Attorneys of appellants, the devisees of their mother, represented their mother in a litigation before her death, and afterwards represented the appellants, as sufficiently appeared from the evidence, and accepted service of a writ of *scire facias* for them. Upon the death of the mother the suit was formally revived against the appellants, and the attorneys consented to a decree to save expense of litigation.

   *Held:* That the devisees were parties to the suit at the time of the decree.

2. PARTIES—*Judgments and Decrees—Decree Binding on Parties.*—Parties to a litigation are bound by the decree therein so far as it adjudicates their rights.

3. DEEDS — *Promoters — Estoppel — Suppression of Deed.* — The grantees in a unrecorded deed were promoters of a corporation afterwards organized. The corporation furnished the consideration for the transfer of the property. After the corporation was organized a conveyance was made by the grantor of the original deed to it and recorded. The original deed to the promoters was delivered to one of them, and if improperly suppressed, it must have been done with his acquiescence. This promoter and grantee was also a stockholder, president, and manager of the corporation.

   *Held:* That such promoter could not be permitted to repudiate his own conduct and claim an interest as against subsequent alienees of the property, who had relied upon the record title, and those claiming under him have no greater rights than he would have, if living.

4. DEEDS—*Deed to Promoter of Corporation—Subsequent Deed to the Corporation.*—A deed was made to the promoters of a corporation as grantees and delivered to one of them. The corporation furnished the consideration for the transfer of the property, and after it was organized the conveyance of the

same property was made by the original grantor to the corporation. The original deed to the promoters was never recorded, whereas the deed to the corporation was recorded.

*Held:* That a fair consideration of the circumstances showed that there was no fraud, either attempted or executed, but that the parties to the original transaction simply did in an irregular manner that which they evidently always contemplated for the preservation of their mutual rights in the joint adventure.

5. ESTOPPEL—*Knowledge of Party Claiming Estoppel.*—It is essential to an equitable estoppel that the party claiming the benefit thereof must be not only without knowledge of the true state of the title, but also without any available and convenient means of acquiring such knowledge.

6. ESTOPPEL—*One of Two Innocent Parties—Ratification.*—There are undoubtedly cases where a party may be concluded from asserting his original rights to property in consequence of his acts or conduct, in which the presence of fraud, actual or constructive, is wanting, as where one or two innocent parties must suffer from the negligence of another, he through whose agency the negligence was occasioned will be held to bear the loss, and where one has received the fruits of a transaction, he is not permitted to deny its validity whilst retaining its benefits. But such cases are generally referable to other principles than that of equitable estoppel, although the same result is produced; thus the first case here mentioned is the affixing of liability upon the party who from negligence indirectly occasioned the injury, and the sceond is the application of the doctrine of ratification or election.

7. ESTOPPEL—*One Cannot Approbate and Reprobate the Same Instrument.*—A person who succeeds in one action in having an instrument pronounced invalid against him cannot in another action set up a claim under the same instrument treated as valid. Nor can a person who has succeeded in persuading the court to adopt for his advantage a certain construction of an instrument, turn around and repudiate that construction when the benefit under it is claimed against him. It is well settled that no person can accept and reject the same instrument.

8. ESTOPPEL—*Acts of Ancestor—Suppression of Deed.*—Appellants' father found it to his advantage to withhold from record a deed to himself and associates, and to accept in lieu thereof a deed to a newly organized company in which he was financially interested as promoter and stockholder.

*Held:* That neither he nor appellants claiming under him could be permitted to assume the inconsistent position of claiming

45

under the original deed suppressed by him, as against those claiming under the deed to the corporation.

9. DEEDS—*Estoppel—Revesting of Land by Surrender and Cancellation.*—While the title to land cannot be revested in the grantor by surrender and cancellation of the deed, acceptance by the grantee is essential to the passage of the title; and where a grantee in a deed fails to record it and accepts in lieu of it a deed to a corporation in which he is interested as promoter and stockholder, it may be inferred that he declined to accept the original deed and preferred to accept the new deed from the grantors to the corporation, and he and his heirs are forever estopped from claiming under the original deed.

10. APPEAL AND ERROR—*Deeds—Recitals Binding on Subsequent Grantees—Reservation.*—Appellants claimed that a decree falsely recited the assent of their counsel to the introduction of certain evidence, and to the hearing of the cause in vacation.

   *Held:* That whatever the effect of this might be, it could not avail appellants, because, whether bound by the decree or not, they were bound by the deeds under which they derived their title, and these deeds expressly excepted the minerals, timber, and water rights in question in the litigation. Appellants had actual and constructive notice of the reservation of such rights in the original deed, and if their attorney had been present and contested the decree now objected to, his objection would have been unavailing.

11. DEEDS—*Notice to Subsequent Grantees.*—Subsequent purchasers of land were charged with notice of a reservation of water and timber rights in an original deed, for in nearly every conveyance in their chain of title the reservation was substantially repeated. They cannot claim more than their grantors conveyed or had a right to convey.

12. TREES AND TIMBER—*Sale of Timber Rights—Time of Removal of Timber.*—Where one owns the fee in the land and another owns the timber growing thereon, with the right to remove it, the owner of the timber should sever and remove it within a reasonable time, unless the contract clearly gives an indefinite and perpetual right to allow the timber to remain unsevered. While it is possible so to draw a contract as to give such a perpetual right to the owner of the timber, the courts will not construe a contract to have such meaning, unless the parties clearly so intended and definitely expressed such intention.

13. APPEAL AND ERROR—*Decree by Appellate Court—Timber Rights.*—A decree of court relating to timber and the right to remove it from the land of another imposed no limitation as to the

time within which the timber should be removed. Inasmuch as the lower court should have fixed a reasonable time within which to remove the timber, the Supreme Court of Appeals amended the decree, so as ·to require its removal within eighteen months from date, with leave to the owner to apply to the lower court within six months from date, for a reasonable extension· of such time:

Appeal from a· decree of the Circuit Court of Culpeper county. ˙ Decree for defendants. Complainants appeal.

*Amended, affirmed, and remanded.*

The opinion states the case.

*St. George R. Fitzhugh and A. T. Embrey,* for the appellants.

*Waite, Perry & Nottingham* and *Hiden & Bickers,* and *W. W. Butzner,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

The appellants filed their bill alleging fraud in the procurement of certain decrees which had been entered in previous suits, involving conflicting titles and rights in certain real estate in Culpeper county. The trial court decided all questions adversely to their contentions, dismissed the bill, and they are here complaining.

The pertinent facts leading up to the present litigation are these: Some time prior to 1899, the Powhatan Land and Mining Company (not the defendant company here) owned two tracts of land, one containing 500 acres and the other containing 499 acres, separated from each other by an intervening parcel of land known as the Ellis gold mine tract. Both parcels of land fronted on the Rappahannock river, both are in an agricultural community and valuable

for farming purposes, and they were sold under decrees of the Circuit Court of the United States for the Eastern District of Virginia, and conveyed to T. L. Williams, together with certain machinery, tools, fixtures, franchise rights and interests theretofore owned by the Powhatan Land and Mining Company.

By deed dated February 18, 1899, Williams and wife conveyed to Wm. C. Haslage (one undivided third), Joseph F. Erny (one undivided sixth), Lena W. Lappe (one undivided sixth), and Larman G. Johnson (one undivided third), the 500-acre tract, together with certain rights in the 499-acre tract, expressed in this language: "also a like share and interest to each of the parties of the second part in the mineral, timber and water rights in and to that certain other tract of land in the lower end of Culpeper county, containing 499 acres, and known as the Ellis farm tract, bounded on the north by the Rappahannock river, on the east by the public highway adjoining the Ellis mine tract, on the south by the Richards Ferry road, and on the west by lands of Downey, together with such surface rights and privileges as are necessary for the full and complete enjoyment of the easements above described." This deed was never recorded. By deed of the same date, February 18, 1899, Williams and wife conveyed to Anna M. Johnson (wife of the said L. G. Johnson), the 499-acre tract, with a reservation in this language: "* * subject to the easement granted by deed to W. C. Haslage, Joseph F. Erny, Lena W. Lappe and L. G. Johnson, of the mineral, timber and water rights thereon and thereto." After this and before this deed to Anna M. Johnson was recorded, that is, on May 12, 1899, the Powhatan Mining Company, one of the appellees, was incorporated by the State of West Virginia, the incorporators being the said Johnson, Haslage, Erny and Lappe, together with one F. A. Erny. It is apparent that these persons were the promoters of the com-

pany, which was organized for mining and other purposes, and that they proposed to develop the land referred to. Afterwards, on October 23, 1899, Williams and wife conveyed to the said Powhatan Mining Company, Inc., the same 500-acre tract of land, together with the same mineral, timber and water rights in and to the 499-acre tract, and this deed was recorded on the 6th day of November, 1899. Thereafter, on September 29, 1901, the said deed to Anna M. Johnson for the 499-acre tract, subject to the reservation, was recorded.

The Powhatan Mining Company, Inc., was no more successful than its predecessor, soon ceased to operate, and the 500-acre tract was sold in 1905 in a suit instituted by a creditor, the German Savings and Deposit Bank, first to one J. E. Roth, who later conveyed it to Joseph F. Erny, one of appellees.

Thereafter, in 1907, Joseph F. Erny and Lena W. Lappe, heretofore referred to, instituted their suit against the Powhatan Mining Company, Inc., and others, alleging that they were stockholders in the company, that it had ceased to do business for at least four years, and that the only assets belonging to it, except $1,150 balance in the hands of a special commissioner arising from the sale of the 500-acre tract, were the said mineral, timber and water rights in and to the 499-acre tract, reciting the deed from Williams and wife to the company, and praying for a distribution of these assets among the stockholders. By that time Johnson had died, and among the parties defendant were Pulliam, his administrator, and his widow, Anna M. Johnson, the owner of the 499-acre tract under her deed hereinbefore referred to. Certain proceedings were had in that suit, which resulted in the sale of the mineral, timber and water rights referred to, which were also bought by Joseph F. Erny.

The controversy largely grows out of the decree in that

suit, entered May 2, 1914. Before it was entered Anna M. Johnson had died, and the case had been revived in the name of Anna E. Johnson, her administratrix, and the said Anna E. Johnson and Cora M. Johnson, two of her three daughters, to whom her entire estate had been devised and bequeathed. Substantially all of the issues as to the rights of the parties in the present suit were raised in that, and the court, reciting that certain written statements of Erny, Haslage and Lappe had been read as depositions, by consent of counsel given in open court, and upon a copy of the unrecorded deed from Williams and wife to Haslage, Johnson, Erny and Lappe of February 18, 1899, by consent of counsel given in open court admitted in place of the lost original, overruled the demurrer to the bill and decreed as follows: "And it appearing further to the court that the defendant, Anna M. Johnson, took no right, title or interest whatever in or to the minerals, timber or water rights on the 499-acre tract involved in this suit, and that the deed from Thomas L. Williams and wife, dated February 18, 1899, conveyed the land to her subject to the prior grant of the exclusive rights in all minerals, timber and water to W. C. Haslage, L. G. Johnson, J. F. Erny and Lena W. Lappe, and that the equitable title to all of said minerals, timber and water rights is now held by the Powhatan Mining Company, and that the same should be sold for the purpose of preserving them," directed the sale of "all the mineral, timber and water rights, which were reserved in favor of said Powhatan Mining Company upon the Ellis farm tract of land, situated in Culpeper county, Virginia, and more fully described in the bill in this cause," adjudging them to constitute a part of the assets of said company.

[1] Among the reasons for alleging that this decree is invalid is the contention that two of the appellants here, Anna E. Johnson and Cora M. Johnson, the devisees of their mother, were not parties to the suit at the time of this de-

cree. The facts, as clearly shown by the record, are, that the firm of Grimsley & Miller, reputable attorneys at Culpeper, Va., represented their mother in her own right before her death, and that afterwards they represented these appellees, having had correspondence and personal interviews with Anna E. Johnson, acting in her own right and as administratrix of her mother, and claiming to represent her sister. These attorneys accepted service of the writ of *scire facias* for Anna E. Johnson and Cora M. Johnson. The proof that they had been previously retained as attorneys by Anna E. Johnson is perfectly clear, being shown by her own letters and by the testimony of disinterested witnesses, and it is sufficient to show that they also represented Cora M. Johnson. Thereupon the suit was formally revived against Anna E. Johnson and Cora M. Johnson, devisees of Anna M. Johnson, and that record is complete, satisfactory and cannot be successfully impeached. *Denton* v. *Noyes,* 6 Johns. (N. Y.) 296, 5 Am. Dec. 237; *American Ins. Co.* v. *Oakley,* 9 Paige (N. Y.) 496, 38 Am. Dec. 561; *McCullough* v. *Guetner,* 1 Bin. (Pa.) 214; *Hefferman* v. *Burt,* 7 Ia. 320, 71 Am. Dec. 445; *Hendrix* v. *Fuller,* 7 Kan. 331; *Perry* v. *McHuffman,* 7 W. Va. 306; *Marling* v. *Robrecht,* 13 W. Va. 436. It was upon the consent of these attorneys that the decree of May 2, 1914, was entered, and their reasons for such consent are stated to be because they did not desire to add to the expense of a litigation which had already been greatly delayed, and from which, in their opinion, no result of appreciable value could be obtained for their clients.

[2] The bill further alleges that this decree was obtained fraudulently, but this allegation is entirely unsustained by evidence.

The claim that this decree was invalid as to these two appellants for any of the reasons heretofore stated is so clearly unsupported that we do not think it necessary to

say more about it, except that we agree with the trial court that Anna E. Johnson and her sister, parties to this litigation, are bound thereby so far as it adjudicated their rights.

[3, 4] Another claim made for these appellants is that there was a fraud upon their rights by reason of the suppression and concealment from them of the first deed which Williams and wife gave to Haslage, Erny, Lappe and Johnson, of February 18, 1899, contemporaneously with the deed to their mother for the 499-acre tract, because under this deed they inherited from their father both a one-third interest in the 500-acre tract as well as a one-third interest in the mineral, timber and water rights in the 499-acre tract, of which rights they had no knowledge until November, 1915, after all of the transactions referred to, learning it through an inspection of the record in the case of *Erny and Lappe* v. *Powhatan Mining Co.,* having then first seen the decree of May 2, 1914, in which a copy of this deed was admitted by consent of counsel in lieu of the original.

For a proper consideration of this question we must go back to the transactions heretofore recited. It appears, or may be fairly inferred, that the four grantees in that deed were promoters of the Powhatan Mining Company, which they afterwards organized; that all lived in Pittsburg, Penn., except Johnson, who lived on the 500-acre tract; that this company furnished the consideration for the transfer of the property; that they were the trustees for the company not then organized; and that after the corporation was organized the conveyance was made to it by the original grantor, Williams, who had previously conveyed the same property to them. If the deed to these promoters was improperly suppressed, it must have been done with the acquiescence of L. G. Johnson and these appellees as his children are here claiming as his heirs at law. He was one of the grantees in this deed, but he was also

a stockholder, president, the active promoter and manager of the company. That he, after all these years, could be permitted to repudiate his own conduct, and claim an interest as against subsequent alienees of the property who have relied upon the record title which he, presumably for his own benefit, had united in creating by such suppression, is unthinkable. It is equally apparent that those claiming under him have no greater rights than he would have, if living. To sustain such a claim would be a fraud upon those who have relied upon the record title in favor of the heirs at law of the person most responsible for such alleged fraudulent suppression. A fair consideration of the circumstances, however, shows that there was no fraud, either attempted or executed, but that the parties to the original transaction have simply done in an irregular manner that which they evidently always contemplated for the preservation of their mutual rights in the joint adventure. Even if all the facts which are now disclosed and relied upon had been presented to the court when the decree of May 2, 1914, was entered, no other proper conclusion could have been reached.

[5, 6] It may be that the doctrine of equitable estoppel does not apply to these appellants, because it has been said with reference to that doctrine that it is essential that the party claiming the benefit thereof must be not only without knowledge of the true state of the title, but also without any available and convenient means of acquiring such knowledge. It is nevertheless true, as has been said in the case of *Brant* v. *Virginia Coal & Iron Co.*, 93 U. S. 336, 23 L. Ed. 929, that, "There are, undoubtedly, cases where a party may be concluded from asserting his original rights to property in consequence of his acts or conduct, in which the presence of fraud, actual or constructive, is wanting; as, where one of two innocent parties must suffer from the negligence of another, he through whose agency the neg-

ligence was occasioned will be held to bear the loss; and where one has received the fruits of a transaction, he is not permitted to deny its validity whilst retaining its benefits. But such cases are generally referable to other principles than that of equitable estoppel, although the same result is produced; thus the first case here mentioned is the affixing of liability upon the party who from negligence indirectly occasioned the injury, and the second is the application of the doctrine of ratification or election.

[7, 8] There is close analogy also to the doctrine that one cannot "approbate and reprobate," discussed in 3 Eng. Rul. Cas. 310. This rule is stated thus: "A person who succeeds in one action in having an instrument pronounced invalid against him, cannot in another action set up a claim under the same instrument treated as valid. Nor can a person who has succeeded in persuading the court to adopt for his advantage a certain construction of an instrument, turn round and repudiate that construction when the benefit under it is claimed against him." Applying the doctrine, Lord Eldon, in *Ker* v. *Wauchope*, 1 Bligh 21, said: "It is equally settled in the law of Scotland, as of England, that no person can accept and reject the same instrument." In *Smith* v. *Baker* (1873), L. R., 8 C. P. 350, 42 L. J. C. P. 155, it is said: "A man cannot say at one time that the transaction is valid and thereby obtain some advantage to which he could only be entitled on the footing that it is valid, and at another time say it is void for the purpose of securing some further advantage." This is just the position of the appellants here. Their predecessor in the title claimed, their father, L. G. Johnson, found it to his advantage to withhold from record the first deed from Williams and wife to himself and his associates, and to accept in lieu thereof a deed to the newly organized company in which he was financially interested, and neither he nor they could now be permitted to assume an inconsistent position

after he has received all the benefits which he derived therefrom as a promoter and stockholder of the company.

This appears in the American note to the case of *Ker* v. *Wauchope, supra,* 3 Eng. R. Cas. 328: "A person cannot claim under an instrument without confirming it. He must found his claim on the whole, and cannot adopt that feature or operation which makes in his favor, and at the same time repudiate or contradict another which is counter or adverse to it." He "cannot accept and reject the same instrument." Citing, *Jacobs* v. *Miller,* 50 Mich. 127, 15 N. W. 42; *Emmons* v. *Milwaukee,* 32 Wis. 434; *Morrison* v. *Bowman,* 29 Cal. 337; *Thompson* v. *Thompson,* 19 Me. 235, 36 Am. Dec. 751; *Smith* v. *Smith,* 14 Gray (Mass.) 532; *The Water Witch,* 1 Black (U. S. Sup. Ct.) 494, 17 L. Ed. 155; *Cowell* v. *Colorado Springs,* 100 U. S. 55, 25 L. Ed. 547; *Scholey* v. *Rew,* 90 U. S. (23 Wall.) 331, 23 L. Ed. 99; *Tuite* v. *Stevens,* 98 Mass. 305; *Caulfield* v. *Sullivan,* 85 N. Y. 153; *Swanson* v. *Tarkington,* 7 Heisk (Tenn.) 612; *Hart* v. *Johnson,* 6 Ohio 87; *Botsford* v. *Murphy,* 47 Mich. 537, 11 N. W. 375, 376.

[9] In *Ames* v. *Ames,* 80 Ark. 8, 96 S. W. 144, 117 Am. St. Rep. 68, the court concedes that the title to land cannot be revested in the grantor by surrender and cancellation of the deed, but reverts to the rule that the acceptance by the grantee is essential to the passage of the title, and holds that where the grantee, a short time after the execution of the deed, went to the grantor, asserting that he never accepted it because not executed in accordance with his wishes, and demanded the execution of a new deed to his wife and children, and this is done, the husband and his grantees are forever estopped from claiming under the original deed.

It may well be concluded, under the circumstances of this case, from the conduct of L. G. Johnson, the grantee in the first deed, that he declined to accept it, and preferred to

accept a new deed from the grantors to the corporation. If so, the rule applied in the case last cited would apply to the case in judgment.

[10] It is claimed for the other appellants, Fredericksburg Power Company, and its grantee, Spotsylvania Power Company, who own the fee in thirty-six acres on the Rappahannock river front, part of the 499-acre tract, that the former company was a party to the suit of *Lappe and Erny* against the *Powhatan Mining Company and others,* and that the decree of May 2, 1914, falsely recited the assent of its counsel to the introduction of certain evidence, and to the hearing of the cause in vacation. Whatever the effect of this may be, it cannot avail either of these appellants in this proceeding, because whether bound by the decree or not, they are certainly bound by the deeds under which they derive their title, and these deeds expressly except the minerals, timber and water rights, if any, of the Powhatan Mining Company, Inc. They had actual and constructive notice of the reservation of such rights in the original deed, and even if their attorney had been present and contested the decree which is now objected to, his objection would have been unavailing. Even if the question be entirely open, their claim to hold the property discharged from the reservations is not only unsupported by, but is against, the evidence, without merit and cannot be sustained.

[11] The other appellant, W. S. Embrey & Co., Inc., with actual and constructive notice of all of the facts now appearing, and just before the institution of this suit, bought from Anna E. Johnson and Cora M. Johnson the merchantable pine, oak and other timber, with certain exceptions not necessary to recite, on 453 acres, parcel of the 499-acre tract, and from what we have previously said it is apparent that we are also of opinion that their right is subordinate to the rights of the appellee, Jos. F. Erny, and his alienee, for they now own the timber on such land, which

was conveyed to the Powhatan Mining Company, Inc. There can be no doubt whatever that all of those appellants are charged expressly with notice of the reservation in the original deed from Williams and wife to Anna M. Johnson, for in nearly every conveyance in their chain of title the reservation is substantially repeated, and they cannot claim more than their grantors conveyed or had the right to convey.

[12] The decree in this cause from which this appeal is taken construes the language of such grant of the mineral, timber and water rights thus: That it "means, embraces and includes a full and complete right, title and interest in, to and for all the mineral rights and privileges, all the water rights and privileges, and all the timber rights and privileges, together with the right to use and remove the same from the said 499-acre tract of land, with all necessary rights and privileges for the full and complete enjoyment of the easement upon the said 499-acre tract of land." So far as this relates to the timber and the right to remove the same, we are of opinion that the court should have imposed a reasonable limitation as to the time within which such timber should be removed. While the question is not entirely free from doubt, and there has been some conflict in the authorities, in this State it is settled since the case of *Young and Wright* v. *Camp Mfg. Co.*, 110 Va. 678, 66 S. E. 843, that where one owns the fee in the land and another owns the timber growing thereon, with the right to remove it, the owner of the timber should sever and remove it within a reasonable time, unless the contract clearly gives an indefinite and perpetual right to allow the timber to remain unsevered. It would be a hardship never contemplated by the parties in the original contract for the sale of growing timber to permit the owner of the timber to use the surface of the land indefinitely and thus deny its use to the owner of the fee. While it is possible so to

draw a contract as to give such a perpetual right to the owner of the timber, the courts will not construe a contract to have such meaning unless the parties clearly so intended and definitely expressed such intention. The subsequent Virginia cases of *Carpenter* v. *Camp Mfg. Co.,* 112 Va. 300, 71 S. E. 559, and *Brown* v. *Surry Lumber Co.,* 113 Va. 503, 75 S. E. 84, approve and follow *Young and Wright* v. *Camp Mfg. Co.,* and this accords with the weight of authority. *Eastern Ky. M. & T. Co.* v. *Swann-Day Lumber Co.,* 148 Ky. 82, 146 S. W. 438, 46 L. R. A. (N. S.) 673, note.

It is difficult to determine what is included in the grant of the "water rights in and to" the 499-acre tract. The Rappahannock river flows by the land on its journey to the sea, and there, as elsewhere, the rains are impartial and fall as well upon the unjust as upon the just. Like the sunshine and the air, the water is intended for the benefit of all, and it is exceedingly difficult for any to use or utilize all that is available in that vicinity. There appears to be enough for all, and after the owner of this water right, whatever it may include, has used or utilized all that it is possible to avail himself of, there will still be an abundance going to waste, doubtless far more than is sufficient for the domestic and agricultural purposes of the owners of the land which is subject to the reservation. Circumstances may develop in the future which will make it necessary to define more definitely just what is meant by the reservation of these water rights; for the present, we must leave this question where this obscure contract of the parties puts it, subject to review in future litigation, if any substantial conflict shall arise growing out of the right itself or its method of exercise.

It is unnecessary to discuss or consider more fully any of the other questions raised as to the validity of the decrees complained of, because, even if all those questions

were decided in favor of the appellants, it is nevertheless true that upon the merits the decrees complained of are right, in so far as they adjudicate the rights of the parties.

[13]   In this case the court should have fixed a reasonable time within which to remove the timber.   This court will, therefore, amend the decree so as to require its removal within eighteen months from this date, with leave to the owner thereof to apply to the Circuit Court of Culpeper county, in this cause, within six months from this date for a reasonable extension of such time if actually necessary.

The decree will, therefore, be amended and affirmed, without prejudice to the rights of the parties interested to have the conveyances further construed if necessary.

*Amended, affirmed and remanded.*