## Staunton

J. T. ALTIZER AND M. V. MULLINS, v. JEWELL RIDGE COAL CORPORATION.

September 17, 1931.

Present, Prentis, C. J., and Campbell, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Roland E. Chase,* for the appellants.

*H. Claude Pobst* and *Greever & Gillespie,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

J. T. Altizer and M. V. Mullins filed separate bills of complaint praying that the Jewell Ridge Coal Corporation be enjoined from cutting and removing the timber from certain lands owned by them. A temporary injunction was granted in each case, depositions were taken, and the facts being practically the same, by agreement the cases were heard together. A decree was entered dissolving the temporary injunction and dismissing both cases. From that decree the complainants were granted an appeal.

The contention of the parties arose out of the following facts: J. T. Altizer owned a tract of land containing 230 acres, 218 acres of which he obtained from his father, Riley Altizer, by deed dated April 1, 1910, and twelve acres by deed from Garland H. Brown and wife. Riley Altizer by deed dated May 5, 1903, conveyed all the coal, minerals, metals, oil and timber on the said 218 acres to Thomas M. Righter, trustee, with the right to remove all the minerals and timber therefrom.

M. V. Mullins on April 5, 1926, purchased from Garland H. Brown and wife 12.5 acres of land. The twelve acres now owned by Altizer and the 12.5 acres owned by M. V.

Mullins were parts of a larger tract consisting of 127.74 acres, on which the coal, minerals and timber, by deed dated May 5, 1903, were conveyed by Garland H. Brown and wife to Thomas M. Righter, trustee. Thomas M. Righter, trustee, by deed dated August 28, 1906, conveyed all the rights and interests which he obtained by the above instruments to the Pocahontas Mining Corporation. It is the standing timber on these two tracts, *i. e.*, the 230 acres referred to as the Altizer tract, and the 12.5 acres referred to as the Mullins tract, which is the subject of this litigation.

The Pocahontas Mining Corporation leased to the Jewell Ridge Coal Corporation, the appellee, the right to take the coal and a limited quantity of timber from these two tracts of land.

The deeds dated May 5, 1903, by which the timber was acquired and which control the rights of the parties, granted to the purchaser, Thomas M. Righter, trustee, "all the coal, minerals, and metals, oil and timber on and under" certain described tracts of land, with "the right to take the entire body or bodies of coal, minerals, metals, oil or timber herein conveyed off, through and under and over said land," and the further right "to take and use so much water and stone from said land as said mining purposes may require." The grantors "warrant generally the property" and "that the same is free from encumbrances." Certain described trees are excepted from the grant in each conveyance. The Altizer deed reserves the right and privilege to clear 100 acres and the use of coal and timber for domestic purposes. It will be noticed that the conveyances are silent as to the time in which the timber should be cut and removed.

The appellee contends that by the above instruments there was conveyed to its predecessors in title a perpetual right to enter the land for the purpose of removing the timber.

Instruments involving the sale of timber have been

a fruitful source of litigation and the rights of the parties where the timber is owned by one person and the land by another have been much discussed by the courts in the different States. The majority of the decisions hold that when the contract of sale fixes no time limit for the removal of the timber it must be removed within a reasonable time.

It is said in *Adams* v. *Hazen*, 123 Va. 304, 96 S. E. 741, at page 746, where the court construed a contract for the sale of timber in which no time limit was fixed for the removal, "it is well settled that, where no time for the removal of timber is specified in timber contracts, the contracts will be construed as providing, by implication, for 'a reasonable time' for such removal." *Wright* v. *Camp Mfg. Co.*, 110 Va. 678, 66 S. E. 843; *Carpenter* v. *Camp Mfg. Co.*, 112 Va. 300, 71 S. E. 559; *Brown* v. *Surry Lumber Co.*, 113 Va. 503, 75 S. E. 84.

The principle was clearly stated by Prentis, J., in *Johnson* v. *Powhatan Mining Co.*, 127 Va. 352, 103 S. E. 703, 707, where it is said:

"While the question is not entirely free from doubt, and there has been some conflict in the authorities, in this state it is settled since the case of *Young & Wright* v. *Camp Mfg. Co.*, 110 Va. 678, 66 S. E. 843, that where one owns the fee in the land and another owns the timber growing thereon, with the right to remove it, the owner of the timber should sever and remove it within a reasonable time, unless the contract clearly gives an indefinite and perpetual right to allow the timber to remain unsevered. It would be a hardship never contemplated by the parties in the original contract for the sale of growing timber to permit the owner of the timber to use the surface of the land indefinitely, and thus deny its use to the owner of the fee. While it is possible so to draw a contract as to give such a perpetual right to the owner of the timber, the courts will not construe a contract to have such meaning unless the parties clearly so intended and definitely expressed such intention."

The above language was quoted by Judge Waddill, speaking for the Circuit Court of Appeals, Fourth Circuit, in *Thomas* v. *Gates*, 31 Fed. (2d) 828, 830, where he said:

"This would seem to be well settled by the Virginia authorities, and this court would be bound thereby even if the correctness, justice, and fairness of the same did not commend itself to our judgment."

The appellee in his brief contends, in effect, that the case of *Wilson Bros.* v. *Branham*, 131 Va. 364, 109 S. E. 189, 196, overrules the doctrine established by the above decisions. A careful reading of the opinion shows that, on the contrary, the doctrine was there recognized and reiterated, for the court said:

"*Johnson* v. *Powhatan Mining Co.*, 127 Va. 352, 103 S. E. 703, a recent case, reaffirms the proposition that, where one owns the fee in land and another the standing timber thereon, with a right of removal, the owner of the timber should remove the same within a reasonable time, unless the contract clearly affords an indefinite and perpetual right to allow the timber to remain unsevered. But the same case affirms the companion proposition that it is possible to so draw a contract as to give such a perpetual right to the owner of the timber, though a contract should not be construed to 'have such meaning unless the parties clearly so intended and definitely expressed such intention.' "

The court in that case did hold that because of the peculiar wording of the deed in controversy, the grantee obtained a perpetual right to enter the land and remove certain trees. The instrument conveyed to the grantee a definite number of trees, all marked with the letter H. Ten years were given in which to cut and remove the designated trees, with the provision that if they were not removed within that time the owner of the land had the right to deaden such of them as might be standing on land which he desired to use for agricultural purposes. The court rightly held that

if it had been contemplated by the parties that such trees as were not cut and removed within the ten year period should remain the property of the landowner, then reserving the right to deaden them after the expiration of that time was inconsistent with absolute ownership. The only construction of the instrument which would give full force and effect to the language used was to hold that the parties intended to give to the grantee a perpetual right to enter the land and remove the marked trees then standing, subject to the right in the landowner, after the ten year period, to deaden such trees as might be standing on land which he desired to use for the purpose named.

■■ The deeds in the present case are silent as to the time in which the timber should be cut and removed, as were the instruments in the cases of *Johnson* v. *Powhatan Mining Co., supra; Adams* v. *Hazen, supra; Thomas* v. *Gates, supra; Stump* v. *Moore*, 104 W. Va. 513, 140 S. E. 480; *Joyce* v. *Gibson*, 106 W. Va. 221, 145 S. E. 279, 280.

The instruments construed in *Johnson* v. *Powhatan Mining Co., supra*, and *Joyce* v. *Gibson, supra*, like those in the instant case, were instruments wherein coal, timber and mineral rights were conveyed by the same grant. Nevertheless, both the courts of Virginia and West Virginia construed the timber rights as if they had been conveyed by separate grants.

Applying the above settled principle to the construction of the instruments here under consideration, there is nothing in the evidence to show that the parties clearly intended, or definitely expressed the intention, to convey a perpetual right to enter the land and remove the timber. It follows that the grantee only acquired the right to remove the timber within a reasonable time.

■ The appellee contends that, even though a perpetual right to enter the land and remove the timber was not obtained by it in the above grants, a reasonable time has not expired.

What is a reasonable time depends upon the facts and circumstances of each particular case, and inasmuch as the facts vary in the different cases it is impossible to lay down any hard and fast rule with reference thereto. In the leading case of *Young & Wright* v. *Camp Mfg. Co.*, 110 Va. 678, 66 S. E. 843, the facts were that a deed made in 1895 gave a period of five years in which to cut and remove the timber, with a proviso that if the grantee failed to remove it within that time it should, upon the yearly payment of a certain stipulated sum, have such further time as might be desired. The timber was not cut within the prescribed period and from 1900 until 1903 the stipulated amount was paid annually. From 1904 down to the time of the filing of the suit in 1909 the grantor declined to accept any of the extension payments. The court held that one year from the entry of the final order was a reasonable time in which the grantee had a right to cut and remove the timber, or a total period of sixteen years from the date of the deed.

In the case of *Thomas* v. *Gates, supra*, a sale of the standing timber on a 3,500 acre tract in Smyth county, Virginia, was made in 1903. The court held that fifteen months from the entry of the final order in 1929 was a reasonable time in which to cut and remove the timber.

What is a reasonable time is discussed in *Eastern Kentucky M. & T. Co.* v. *Swann-Day Lumber Co.*, 148 Ky. 83, 146 S. W. 438, 46 L. R. A. (N. S.), 672, and note; a note to the case of *Zirkle* v. *Allison*, 126 Va. 701, 101 S. E. 869, 15 A. L. R. 38; *McGill* v. *Holman*, 208 Ala. 9, 93 So. 848, 31 A. L. R. 941, and note; *Hickman* v. *Enterprise Lumber Co.*, 159 La. 270, 105 So. 340, 42 A. L. R. 635, note beginning on page 643; note in 71 A. L. R. 143.

■■ The facts and circumstances relied on in the instant case to show that a reasonable time for the severance and removal of the timber has not expired are, that in 1903, when the deeds here in question were executed, the land

described was situated in a remote section of Buchanan county, across Big Sandy mountain, inaccessible to railroads; that at the time of the transfer the then owners of the land realized that the coal, minerals and timber were inaccessible to market and that their value depended upon whether a railroad would be built close enough to the land to afford transportation facilities, and there were then no known plans for the building of any railroad; that the use of the timber for mining purposes was discussed at that time by the parties; that the land was rough, stiff mountain land, with a good deal of stone on the surface; that farming it was done with considerable difficulty and it was of comparatively little value, even after it was cleared, for agricultural purposes; that the coal on these tracts has not yet been mined, although in 1909 mining operations were begun on the same vein underlying these lands, but upon tracts belonging to other parties, and that under normal operations it will be eight or ten years before the coal is mined.

It appears, however, from the evidence that by 1910 a railroad had been built in close proximity to the land described and in that year the Pocahontas Mining Corporation sold to the R. L. Ritter Lumber Company, and this company cut and removed all of the merchantable timber from the M. V. Mullins tract and all from the Altizer tract except that on twenty acres.

It also appears that in 1910 there was left on the tracts of land which had been cut over some of the smaller timber which might have been used for mine props, but that most of the timber now standing on the land is only about twenty years of age.

Mr. George W. StClair, an officer of the defendant company, testified that the sale of the timber on these two tracts in 1910 was a serious mistake on the part of the Pocahontas Mining Corporation, because it would need

all of this timber, and more, for use in its mines. This may be true, but it is a mistake for which the complainants are in no way responsible.

While the owners of the fee may not desire to use the land for agricultural purposes, still they are entitled, once the timber is removed, to the remaining growth on the land and to the use of the same for such purposes as they desire.

Building roads through the timber lands, felling trees, hauling logs to sawmill and lumber therefrom necessarily destroy a great many trees not of sufficient size for commercial use. The dead limbs and laps of trees left in the woods greatly increase the danger of forest fires. These facts were, of course, known to both parties and were burdens incident to the removal of the timber.

While a continuous cutting and removal of the timber, once the operation was begun, may not have been in the contemplation of the parties at the time of the grant, neither was a delay of twenty years from the beginning of the cutting, during which time the small saplings have grown into merchantable timber, and the limbs and laps of trees cut have decayed and are no longer a fire hazard. If the appellee, after the lapse of twenty years, is permitted to enter the land and remove the timber, the landowner must suffer these incidental burdens a second time. Clearly, it was not the intention of the parties for the grantee to cut and remove all of the merchantable timber and after the lapse of twenty years re-enter the land and cut and remove trees which are now valuable timber, but which at the time of the first entry were only sprouts or saplings.

No distinction is made in the record, or the briefs of counsel, between the land not cut over and that from which the timber has been removed.

The Pocahontas Mining Corporation bought the coal and mineral rights and the standing timber on and under several thousand acres of land in close proximity to the complain-

ant's property. In some instances, not only such rights but the land itself was bought in fee, on other tracts only the timber rights for mining purposes were acquired. The Pocahontas Mining Corporation leased to the appellee the right to mine coal and limited timber rights on a part of the property owned by it. The timber rights conveyed by the leases may be divided into three classes. (1) Where the Pocahontas Mining Corporation owns the land in fee the lessee is given the right to use the timber of all varieties fourteen inches and under in diameter, measured over the bark three feet from the ground, on the upper side. (2) Where the lessor owns the timber on the different tracts of land, the lessee is given the right to use for mining purposes the timber which will come within the above dimensions, *i.e.*, fourteen inches and under in diameter. (3) Where the lessor has the right to use the timber for mining purposes only, the lessee is given the right to use the lessor's entire interest in the timber.

The appellee contends that at the time the deeds were executed it was the intention of the parties that the timber should be used primarily in the mining of the coal. The weight of the evidence shows that in 1910 the Pocahontas Mining Corporation sold the merchantable timber standing on these two tracts of land, and it was cut and removed in that year. In the leases the appellee is only given the right to use the small timber for mining purposes. The Pocahontas Mining Corporation by the express terms of its leases reserved to itself the right to cut and remove all the timber not expressly granted to the lessee. Thus the appellee's predecessor in title has treated its rights to the timber on the complainant's lands as separate and apart from its mining rights, which actions are inconsistent with the appellee's contention.

In the case of *Joyce* v. *Gibson, supra,* the deed whereby the coal, mineral and timber rights were conveyed was

dated in 1890. Some eight or ten years prior to the institution of the suit all of the timber eighteen inches and over, and a part of that sixteen inches and over, in diameter, was cut and removed by the grantee. The purchaser, or his assignee, claimed the timber remaining on the land; that it was conveyed as an incident to the ownership of the minerals, and that the grantee had a right to cut and remove it so long as the minerals remained on the land. Litz, J., in delivering the opinion for the West Virginia court, said:

"This position does not strengthen the title of the plaintiff to the timber. The case of *Sun Lumber Co.* v. *Nelson Fuel Co.*, 88 W. Va. 61, 106 S. E. 41, holds that the grant of timber for mining purposes in a conveyance of the minerals does not prevent the removal of the timber by the grantor, and that such grant of the timber confers upon the grantee merely the right to use such timber for mining purposes as may remain on the land at the time of mining.

"Being of opinion that a reasonable time within which to cut and remove the timber conveyed, if, indeed, any of it remains on the land, has expired, the decree of the circuit court is reversed and the bill of complaint dismissed."

The appellee's claim to the timber is necessarily based upon the terms of the two leases given it by the Pocahontas Mining Corporation, by the express terms of which it is limited in its claim to the small timber, most of which if not all, has grown into valuable dimensions since 1910.

We are of opinion that, under the peculiar circumstances of this case, a reasonable time has expired and the decree complained of should be reversed. The case is remanded to the trial court, with direction to grant the injunction requested, and for such further proceedings, not in conflict with the views herein expressed, as may be necessary to adjust the rights of the parties.

*Reversed.*