PULLEN *v.* BRASWELL, et ux.

No. 40641          February 17, 1958          100 So. 2d 589

*King & King,* Durant, for appellant.

*Rupert Ringold,* Winona; *Satterfield, Shell, Williams & Buford,* Jackson; *K. Hayes Callicutt,* Jackson; *Robertson Horton,* Winona, for appellees.

KYLE, J.

This case is before us on appeal by A. A. Pullen from a decree of the Chancery Court of Montgomery County rendered in favor of J. W. Braswell and his wife, Rebecca Braswell, enjoining the appellant from entering upon the lands of the appellees for the purpose of cutting and removing timber.

The record shows that the appellees, J. W. Braswell and his wife, Rebecca Braswell, are the owners of 585 acres of land situated in Section 6, Township 17, Range 7 East, and in Sections 30 and 31 in Township 18, Range 7 East in Montgomery County; and that on April 15, 1955, the appellees executed and delivered to the appellant, A. A. Pullen, a timber deed, conveying to the appellant all standing hardwood timber located on the above described land "six (6) inches from the ground and eight (8) inches at the stump and upwards, and all pine timber seven (7) inches in width and six (6) inches from the ground and up * * *." The grantee was given a period of three years from the date of the execution of the timber deed within which to cut and remove said timber. The grantee was also given the right of necessary ingress and egress, and the right to establish millsites in order to cut and remove said timber. The deed also contained an express stipulation as follows: "* * * it being distinctly understood between the grantors and the grantee that timber on this land shall not be cut except for one time, that is, that the grantee herein having cut the timber one time shall not be given the privilege of going back and cutting it again; it is also agreed that the cut-

ting of the timber shall begin during the year of 1955.''
The consideration recited in the timber deed was $10
and other good and valuable considerations. The actual
consideration paid was $5,000.

The record shows that the appellant entered upon the
land immediately and began to cut the timber and saw it
into rough lumber.

Pullen had his own crew of timber cutters and loggers,
and operated his own sawmill at a millsite which he had
established on the land. Pullen made a verbal contract
with one George Bonds to cut the pulpwood timber, which
included the sweet gum, black gum, tupelo, hickory and
ash, 8 to 14 inches in diameter, and Bonds agreed to pay
Pullen $2 per unit for the pulpwood. Bonds sold the
pulpwood to Billy C. Hodges, and Hodges issued checks
directly to Pullen for the purchase price of the pulp-
wood delivered to him by Bonds. Bonds stated that he
cut about 575 units of pulpwood, and that Billy Hodges
also cut some pulpwood from the land. Pullen stated
that he was paid each week for the pulpwood cut by Bonds
and his timber cutters. Pullen's crew cut the timber
which measured 14 inches or more in diameter and also
other timber not classified as pulpwood timber. Pullen
and his employees continued to cut timber through the
summer and fall and early winter of 1955. Bonds and
his employees cut pulpwood at the same time. Pullen
also stated that there were some pulpwood trees cut by
Bonds which were above the size specified in his agree-
ment with Bonds.

Pullen remained on the Braswell land until about the
first of March 1956. He then moved his sawmill and
timber crews to another locality, where he had other
tracts of timber which he wished to cut. But Pullen came
back on the Braswell land about the first week in October
1956 and set up his sawmill, and started to cutting tim-
ber again on the lands which he and his timber cutters
had already cut over during the preceding year; and on

October 10, 1956, the Braswells filed their bill of complaint in the chancery court asking for an injunction to stop the second cutting of timber on their lands. The chancellor ordered that a writ of injunction be issued restraining Pullen from the further cutting of timber on the land until further order of the court; and Pullen suspended his operations until a hearing before the chancellor on November 2, 1956, when the temporary injunction was modified so as to permit Pullen to cut the timber on a small tract of land lying in the bend of the Big Black River, which the evidence offered at that time indicated had not been cut over during the original cutting. Pullen resumed his timber cutting after the injunction had been modified; but on November 19 the complainants caused a citation to be issued charging Pullen with contempt for violating the modified decree. Pullen filed an answer to the bill of complaint and the citation for contempt, and also a cross bill in which he asked that the Braswells be enjoined from interfering with the right of ingress and egress granted to him in the timber deed, and that he be awarded damages for the wrongful interference to which he had been subjected.

The cause was heard by the chancellor upon the pleadings and proof at the regular December 1956 term of the court. Pullen claimed that there was approximately 150,-000 feet of merchantable timber still standing on the Braswell land which he was entitled to cut. Several witnesses testified during the hearing, and the chancellor had before him the testimony taken during the vacation hearing. At the conclusion of the evidence the chancellor found that Pullen had gone on the land in 1955 and cut timber under his timber deed until the first of March 1956, and had then moved off the land; that he had moved back on the land about the first of October, and had started cutting timber on the land which he had already cut; and that, at the time of the issuance of the injunction, he was cutting timber again right where his own witnesses

testified that they had cut pulpwood, hickory and gum during the preceding year. The chancellor found that Pullen had cut all the timber on the land that he was entitled to get, and that Pullen should be enjoined from the further cutting of timber on the Braswell lands. A decree was therefore entered enjoining Pullen from going back on the lands and cutting any more timber. Pullen was allowed two weeks within which to remove his sawmill. The chancellor found that Pullen had misconstrued his timber deed, and the chancellor therefore dismissed the citation for contempt, and also Pullen's cross bill.

The only point argued by the appellants' attorneys as ground for reversal of the decree of the lower court is that the decree is contrary to the law and the evidence. No exception is taken to the findings of the facts; but it is argued that the chancellor erred in his interpretation of the "one cutting" clause in the timber deed as applied to those facts. It is argued that the appellant had a period of three years from the date of the timber deed to cut and remove the timber, and that the three-year period had not expired at the time of the final hearing; that the "one cutting" clause in the timber deed was ambiguous, and that the chancellor erred in holding that the appellant was prohibited from cutting in areas where some timber had been cut by him before the temporary injunction was served on him. It is argued that the "one cutting" clause in the timber deed was designed to prevent the grantee from the cutting of trees at a later date which had grown to a size commensurate with those sold in the deed after the original cutting.

But we think there was no error in the chancellor's finding that the timber on the land had been cut one time, and that the grantee having cut the timber one time should not be given the privilege of going back and cutting it again. The timber that Pullen claimed that he was entitled to go back and cut was timber scattered over about one hundred acres of the land lying immedi-

ately east and south of the 60-acre tract of land referred to in the record as the "Roebuck tract." But, according to the testimony of several of the witnesses who had cut timber for Pullen and Bonds during the year 1955, the timber on that land had been cut by two or three timber crews operating under Pullen or Bonds prior to the time when the appellant moved off of the land about the first of March 1956.

The "one cutting" clause was inserted in the timber deed for the specific purpose of requiring the grantee to cut the timber, or such part thereof as he expected to cut under the terms of the timber deed, in one cutting. That clause was intended to prohibit the grantee, after going over the entire tract and cutting and removing timber which he had a right to cut and remove, from renewing his logging operations on the cutover land at a later date, even though the time allowed for the cutting and removal of the timber conveyed had not expired. Such clauses are not uncommon in timber deeds or timber sales contracts. And there are indeed many reasons for such clauses being inserted in such timber sales contracts. As stated by the Virginia Court in Altizer v. Jewell Ridge Coal Corporation (Va. 1931), 160 S. E. 47, "Building roads through the timber lands, felling trees, hauling logs to sawmill and lumber therefrom necessarily destroy a great many trees not of sufficient size for commercial use. The dead limbs and laps of trees left in the woods greatly increase the danger of forest fires. These facts were, of course, known to both parties, and were burdens incident to the removal of the timber."

The record in this case shows that there was no great amount of timber on much of the 585 acres of land owned by the Braswells. Part of the land was meadow land suitable for cutivation; and the log roads used by Pullen's loggers traversed some of the land on which winter oat crops were to be planted. Other parts of the Bras-

well land were used for hay fields or pasturage. It can be readily seen that the owner of such land might wish to avoid the inconvenience of repetitious logging operations over the same land during a three-year period. But whatever the reasons may have been which prompted the grantors in this case to have inserted in the timber deed the ''one cutting'' clause, the fact remains that the clause was inserted in the deed which the grantors executed and constitutes an integral part of the sales contract. We think the clause meant that there should be but one cutting of the timber on the land by the appellant and those working under him. There is abundant proof in the record to show that the appellant had cut the timber on the land one time, and he did not have the right to go back for a second cutting on the land which he had already cut over. The judgment of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.*, and *Hall, Holmes* and *Ethridge, JJ.*, concur.