CARSON *v.* LUMBER CO.

(*Jackson*　May 24, 1902.)

1. CONTRACT. *For sale of standing trees construed.*

Under a contract for sale of standing trees, which contains no provision as to time for cutting and removing same, the grantee has the right implied by law, to enter upon the lands and cut and remove the same within a reasonable time, but not after the lapse of such reasonable time.

2. SAME. *Same.*

What is a reasonable time for removal of trees under such a contract is a mixed question of law and fact, to be determined upon the facts of each particular case, such as the condition of the land on which the trees are standing, its accessibility, whether subject to overflow or not, and, if subject to overflow, whether such overflow has the effect to aid or hinder the grantee in removal of the trees, the number of trees involved, and the grantee's facilities for cutting and removing same.

3. SAME. *Same. Case in judgment.*

The Court holds that, under the peculiar facts of this case, set out in the opinion, a period of ten years from the date of the contract, excluding therefrom such period as the grantee may have been enjoined from operating on the land, is a reasonable time for cutting and removing trees under such contract.

FROM LAKE.

Appeal from Chancery Court of Lake County, JNO. S. COOPER, Ch.

---

Carson *v.* Lumber Co.

---

BLAIR PIERSON for Carson.

W. A. PERCY for Lumber Co.

BEARD, J.   The complainants are the owners of a tract of timbered and overflowed land lying in Lake County, in this State.   In February, 1893, they sold and conveyed to Hull & Polhemus, their heirs and assigns, all of the cottonwood trees on one thousand acres of this tract.   In July, 1894, the same grantors sold and conveyed to the same grantees all the timber growing on the remainder of the tract ; and in the same conveyance authorized Hull & Polhemus to cut the timber on the one thousand acres.   In other words, by the two conveyances the grantees were vested with the right and title to all trees of every kind on the entire tract.

These conveyances were made for a valuable consideration, a part of which was evidenced by notes which the grantors had sought to secure by retaining a lien in the face of their deed on the trees sold.   In February, 1896, these purchase money notes were paid off, and thereupon complainants executed a quit claim deed to Hull & Polhemus, in which they release their liens and confirm their title to the timber theretofore conveyed in these words : " And in consideration of the same ( that is, the payment of the notes) we convey and confirm to the said Hull & Polhemus all the timber rights, licenses, and privileges in the land mentioned in said deed, to their heirs and assigns forever."   On the

succeeding day to the execution of this quit claim deed, Hull & Polhemus conveyed all the trees on this land to Fitshugh, and in April, 1896, Fitshugh, for a large consideration, sold and conveyed the same property to the "Three States Lumber Company," which was the owner, and as such, was proceeding to get the timber off the land when the present bill was filed on May 11, 1901.

The deed to Hull & Polhemus, while conveying and confirming the title to the timber to them, their heirs and assigns forever, fixed no time for its removal, and the theory of the present bill is that they and their vendees had only a reasonable time to accomplish this, and that such a period having already elapsed, the defendant company had lost all rights to the standing timber, or to enter upon the land of complainants to cut and remove it. In other words, the complainants' construction of the deed conveying the timber is, that the grantees and their assigns took title to only such as they should cut and remove within a reasonable time. On the contrary, the insistence of the defendant corporation is that no time was limited or fixed in the deed from the grantors for the removal of the timber; it has unlimited time, and, if mistaken in this, that, at least, under all the conditions existing, a reasonable period had not elapsed when it was interfered with by the injunction issued in this cause.

The Chancellor adopted the first instance of the complainants, and decreed that upon a proper con-

struction of the deeds to Hull & Polhemus, they, and those claiming under them, only took title to the timber on the land provided it was removed within a reasonable time, and such a period having elapsed, that the Three States Lumber Company had no title to any still standing, and no right to enter upon the land for the purpose of cutting or removing any of such timber. Error is assigned upon this holding.

That a grant of standing trees implies, if no more, at least a right of access to it, and the use of the land for the purpose of severance, and afterwards removing the logs or manufactured timber, was settled as early as the often cited case of *Reniges* v. *Fogassa*, Plowden, 16. This rests upon the doctrine that every grant carries with it whatever is essential to the use and enjoyment of the subject of the grant. 2 Par. on Con., 534. The presumption of the law is that this was in the contemplation of the parties, when the grant was made. Trees standing upon the land of the grantor could be of no value to the grantee, without the right of severance and removal. To him their one worth consists in being cut down and removed, and this can alone be accomplished· by permitting the grantee to enter upon the lands where they are standing. The parties may, and usually do, fix the time for the enjoyment of this right, but if they do not, then what time does the law allow? Is it a period of unlimited or in-

Carson *v.* Lumber Co.

definite duration, or is it one that is reasonable under all the circumstances of the particular case?

If it be, as is insisted by the Three States Lumber Company, that it can remove the timber in question at its own convenience, without regard to the will of the complainants, or the lapse of time, it has, so far as the standing timber may interfere with the use of the soil by its owner, practically ousted him from its control and enjoyment, without having in terms contracted for such extensive rights. It claiming under the original grantees, purchased timber and the right to cut and remove it, and not land, and yet upon its contention, that no limit having been fixed in the grant, it has the right to the use of the soil for the sustenance of the standing trees, and the land as a depository for the cut, and their removal, forever, if it so pleases.

Then, the grantors, in selling timber, have, unwittingly, parted with the control, if not a large part of the ownership of this land. To concede such a contention would be in the face of the natural presumption of what was the intention of the parties to the contract and also of a well established rule of law which is applied to contracts as to other matters, and upon sound reason, should have universal application, which is, that where anything is to be done, as goods to be delivered or the like, and no time is specified in the contract, the law presumes that the parties intended that the

thing should be done in a reasonable time.    5 Lawson's Rights and Rem., 4133; 2 Parsons' Com., 535.

And, as might well be anticipated, this rule has been extended to contracts for standing trees.   *Boults* v. *Mitchel*, 3 Harris, 371 ; *Iron* v. *Webb*, 12 Vroom, 203 (S. C., 32 Am. Rep., 193); *Hoyt* v. *Stratton Mills*, 54 N. H., 109); S. C., 20 Am. Rep., 119; *Boisankiss* v. *Reed*, 2 Keyes (N. Y.), 323, and what is reasonable time of performance of such contracts, ordinarily, is a mixed question of law and fact.   In determining the question in such a case, the condition of the land on which the trees are standing, its accessibility, whether overflowed land or not, and if overflowed, the effect of an overflow in hindering or aiding the grantee in removing the timber when cut, the number of trees standing at the time of the contract, and the facilities under the contract of the grantees for cutting and removing the timber.    When these conditions are ascertained, the law will then say whether the grantee has exercised reasonable diligence under his contract.

This does not involve, and therefore it is unnecessary for us to rule, the vexed question argued with ingenuity, and after much research by the counsel for the complainant and the defendant as to what becomes of the title to the remaining trees, after a reasonable time has. elapsed for their removal, in open contracts like those with which we are now dealing.    For under such contracts, after the expiration of such period, the same question

would be presented as with trees remaining after the lapse of a fixed period, in contracts containing a limitation as to time. For the first class of contracts the law does for the parties what they have done for themselves in the other class. There are cases which hold that the title remains in the grantee after the time of limitation has passed, though without legal right on his part, to enter within the close of the grantor. *Hayton* v. *Stratton Mills, supra* ; *Iron* v. *Webb, supra.* There are others which simply announce that mere lapse of time does not affect the title of the grantee, his right of entry not being involved in litigation. *Goodwin* v. *Hubbard,* 47 Maine, 575 ; *Hawkins* v. *Record,* 32 Vt., 575; *Magnetic Ore Co.* v. *Marbury Lumber Co.,* 104 Ala. (S. C., 27 L. R. A., 434.)

On the other hand, there are cases holding that the title of the grantee terminates with his right of entry. *Saltinstal* v. *Little,* 90 Pa. St., 422 (S. C., 35 Am. Rep., 683) ; *Galden* v. *Glock,* 57 Wis., 118 (S. C., 46 Am. Rep., 32) ; *Boisonbin* v. *Reed, supra,* and in *Macemberson* v. *Detroit, Lansing, etc., Railroad Co.* (Michigan Supreme Court, 1896) ; (S. C., 32 L. R. A., 102, it is said the weight of authority is that timber uncut at the expiration of the time for removal, reverts to the land owner.

Leaving open this question, it is sufficient to say that as we are satisfied, after a careful examination of all the evidence in the record, a reasonable time within which the grantee and their assigns could re-

move the timber covered by the contract, had not expired when the present bill was filed.

It is estimated that in 1893, there was standing on the land from sixteen to eighteen million feet of timber. The land—or the greater part of it—was low and swampy, and subject to overflow from the Mississippi River. At the time of the making of the contract, and until their sale, in 1896, to Fitshugh, Hull & Polhemus looked alone to periodic overflows to float out the logs they cut. In the winter of 1893–4, they succeeded in getting out about one million of feet, and in anticipation of having another overflow, they had cut additionally two or three million feet, but were not able to get it out on account of its failure. Mr. Hull says this timber was lost to his firm, and lying on the ground, worm-eaten and worthless when they made their sale in 1896. The evidence shows that to haul this timber to the Mississippi River, would have entailed a heavy loss to these parties, and at the time they were operating, floating logs in an overflow was regarded as the only feasible plan of getting them to market. Since then, tramways and steel roads, for the purpose, have come into use. In 1898, the Three States Lumber Company contracted with their co-defendant, Peck, to erect a saw mill near the land and cut the trees remaining on it, and convert them into lumber, and that when this bill was filed, he was constructing a steam railroad into the body of this timber, and had entered

Carson *v.* Lumber Co.

his mill and was actively engaged in fulfilling his contract.

Many witnesses who qualify as persons having long and large experience in such work, and their estimates of a reasonable time for removing timber under this contract, was from six to thirteen years. After weighing all the testimony, we have concluded that a period of ten years, from the 1st of November, 1893—this date being midway between the two deeds—is, in view of all the conditions developed in the evidence in existence, or likely to exist, is a reasonable period. There, however, will be excluded from this time, the time which has been lost to the defendants by reason of the pendancy of the injunction in this case.

This bill is therefore dismissed at cost of complainants.