## MITCHELL-CRITTENDEN TIE CO. v. CRAWFORD.

No. 7847—Opinion Filed Oct. 31, 1916.

(160 Pac. 917.)

1. **Indians—Lands—Conveyance of Growing Timber.**

Adopting the construction of certain acts of Congress (Acts Cong. June 28, 1898, c. 517, 30 Stat. 495; July 1, 1902, c. 1375, 32 Stat. 716; Jan. 21, 1903, c. 195, 32 Stat. 774; April 26, 1906, c. 1876, 34 Stat. 137), upon which the Department of the Interior has acted for many years, held, that a conveyance by a member of the Cherokee Tribe of growing timber upon his allotment is not void.

2. **Logs and Logging—Conveyances of Standing Timber—Time for Removal—Reasonable Time.**

An instrument conveying standing timber, which specifies no time for its removal, grants a terminable estate in such timber, which may end when a reasonable time for such removal expires. What constitutes such reasonable time is dependent upon the facts and circumstances of the particular case.

(Syllabus by Bleakmore, C.)

Error from District Court, Sequoyah County; John H. Pitchford, Judge.

Action by John W. Crawford against the Mitchell-Crittenden Tie Company and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

Zevely, Givens & Stoutz, for plaintiffs in error.

Curtis & Pitchford, for defendant in error.

Opinion by BLEAKMORE, C. On November 9, 1906, Cold Springwater, a full-blood allottee of the Cherokee Tribe of Indians, join-

ed by his wife, executed the following instrument, in writing:

"Indian Territory Conveyance of Timber.

"Know all men by these presents that the undersigned, Cold Springwater and Ida Springwater, his wife, of the Eleventh Recording District, Cherokee Nation, in the Indian Territory, in consideration of the sum of $25.00 to them paid by Mitchell-Crittenden Tie Company, a corporation of the city of Kansas City, in the state of Missouri, the receipt and payment whereof are hereby acknowledged, and the further payment of $25.00 within five months and $120.00 within twelve months from the date hereof, have sold and conveyed, and by these presents do sell and convey unto the said Mitchell-Crittenden Tie Company, all the timber suitable for railroad and sawmill purposes standing or being on the following described lands (describing his allotment), together with the free and unobstructed right to said tie company, its agents, servants, and employes at any and all times from the day of the date hereof until the_____ to go to and from, on and over said land for the purpose of cutting and removing said timber on and from said land; and after last-mentioned day the right of said tie company, its agents, servants and employes to go or to be upon said land shall cease and determine. To make this conveyance effective, the undersigned declare and guarantee that there is no incumbrance of any kind whatever upon said lands that will interfere with the right of said Mitchell-Crittenden Tie Company, its agents, servants, and employes, to cut and remove timber from said lands as hereinbefore provided.

"And I, Ida Springwater, wife of the said Cold Springwater, for and in consideration of said sum of money, do hereby release and relinquish unto said Mitchell-Crittenden Tie Company, all my right to dower in and to said timber."

In May, 1908, Cold Springwater died intestate, and subsequently, by virtue of proper conveyances, John W. Crawford acquired title and the possession of said land, and on September 1, 1914, commenced this action, seeking cancellation of said timber conveyance as a cloud upon his title on the ground that the same was void, for the reason that the allottee had no legal capacity to execute the same, he being at the time a restricted full-blood Indian. The defendant, the Mitchell-Crittenden Tie Company, answered asserting the validity of such conveyance, that it constituted no cloud upon the title of the plaintiff, and alleging that the plaintiff had acquired the land in question with knowledge, actual and constructive, of the rights of the defendant under such conveyance, etc. Demurrer to the answer was sustained, and

judgment rendered for plaintiff on the pleadings, from which defendant has appealed.

In construing the foregoing conveyance the trial court held:

"That said contract expired by reason of its own limitation at the expiration of two years from the date thereof, and that said contract is not sufficient to and does not at this time convey any right, title or interest in said land or the timber thereon."

The principle question for consideration is the power of a full blood member of the Cherokee tribe of Indians to execute a valid conveyance of growing timber on his allotted lands.

Section 16 of an act of Congress approved June 28, 1898 (30 Stat. L. 495), entitled "An act for the protection of the people of the Indian Territory, and for other purposes," provides:

"Sec. 16. That it shall be unlawful for any person, after the passage of this act, except as hereinafter provided, to claim, demand, or receive, for his own use or for the use of any one else, any royalty on oil, coal, asphalt, or other mineral or on any timber or lumber, or any other kind of property whatsoever, or any rents on any lands or property belonging to any one of said tribes, or nations in said territory, or for any one to pay to any individual such royalty or rents or any consideration therefor whatsoever; and all royalties and rents hereafter payable to the tribe shall be paid, under such rules and regulations as may be prescribed by the Secretary of the Interior, into the treasury of the United States to the credit of the tribe to which they belong: Provided, that, where any citizen shall be in possession of only such amount of agricultural or grazing lands as would be his just and reasonable share of the lands of his nation or tribe and that to which his wife and minor children are entitled, he may continue to use the same or receive the rents thereon until allotment has been made to him: Provided, further, that nothing herein contained shall impair the rights of any member of a tribe to dispose of any timber contained on his, her, or their allotment."

By act of Congress of July 1, 1902, known as "The Cherokee Treaty," and ratified by that tribe August 7, 1902 (32 Stat. L. 716), it is provided:

"Sec. 14. Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or satisfy any debt, or obligation, or be alienated by the allottee or his heirs, before the expiration of five years from the date of the ratification of this act.

"Sec. 15. All lands allotted to the members of said tribe, except such land as is set aside to each (member) for a homestead as

herein provided, shall be alienable in five years after issuance of patent."

"Sec. 73. The provisions of section thirteen of the act of Congress approved June twenty-eight, eighteen hundred and ninety-eight, entitled 'An act for the protection of the people of the Indian Territory, and for other purposes,' shall not apply to or in any manner affect the lands or other property of said tribe, and no act of Congress or treaty provision inconsistent with this agreement shall be in force in said nation except sections fourteen and twenty-seven of said last-mentioned act, which shall continue in force as if this agreement had not been made."

By act of Congress of January 21, 1903 (32 Stat. L. 774), it is provided:

"That the act entitled 'An act to provide for the use of timber and stone for domestic and industrial purposes in the Indian Territory,' approved June sixth, nineteen hundred, be amended so as to read as follows: That the Secretary of the Interior is authorized to prescribe rules and regulations for the procurement of timber and stone for domestic and industrial purposes including the construction, maintenance, and repairs of railroads and other highways, to be used only in the Indian Territory, or upon any railroad outside of the said territory, which is part of any continuous line of railroad extending into the said territory, from lands belonging to either of the Five Civilized Tribes, and to fix the full value thereof to be paid therefor and collect the same for the benefit of said tribes: Provided, however, that nothing herein contained shall be construed to prevent allottees from disposing of timber and stone on their allotments, as provided in section sixteen of an act entitled 'An act for the protection of the people of the Indian Territory, and for other purposes,' approved June twenty-eighth, eighteen hundred and ninety-eight, from and after the allotment by the Commission to the Five Civilized Tribes."

The provisions, supra, of the foregoing congressional enactments were construed by the Assistant Attorney General for the Department of the Interior in an opinion given to the Secretary on August 3, 1913, wherein it was said:

"After a careful consideration of this matter, I am of the opinion, and so advise you, that the various provisions of law in relation thereto when read and construed together must be held to permit members of the Choctaw and Chickasaw Nations to dispose of timber on the land selected for allotment from and after the time a selection duly made in accordance with law has been approved by the Five Civilized Tribes and certificate to that effect has been duly issued.

"An examination of the agreément with the Cherokee Nation, approved by act of July 1, 1902 (32 Stat. 716), shows that the provisions

thereof affecting the subject under consideration are substantially the same as those relating to the Choctaws and Chickasaws. It is not necessary to repeat the discussion, but is sufficient to say that in my opinion the rule which governs the matter in the Choctaw and Chickasaw Nations applies equally in the Cherokee Nation."

It appears that this construction was adopted and has since been continuously acted upon by the departmental officers in the exercise of their superintending control of the affairs of the Five Civilized Tribes. Relative thereto Mr. Bledsoe, in his work on the Indian Land Laws, says:

"Section 16 of the act of June 28, 1898, is apparently construed by Congress in section 2 of the act of January 21, 1903, to permit allottees of the Five Civilized Tribes to dispose of the timber on their allotments from and after allotment by the Commission to the Five Civilized Tribes, and this is substantially the construction given the act by the Assistant Attorney General for the Department of the Interior under date of August 8, 1903. This construction has been adhered to by the department ever since. The Assistant Attorney General was of the opinion that a conveyance of timber could not be made until after issuance of the allotment certificate. It will be noted that none of these provisions contain affirmative authority to sell. Considered together it seems reasonably clear that Congress by these several provisions intended that the members of the Five Civilized Tribes should 'from and after allotment by the Commission,' be permitted to sell and convey the timber upon their allotments. While the language appears to be more in recognition of a right than a positive declaration of the same, it is fairly susceptible of the construction authorizing such sale and disposition. If it does not confer upon the allottee the right to sell his timber after he takes his land in allotment, then the provisos to the act of June 28, 1898, and of January 21, 1903, are each ineffectual for any purpose."

"In the construction of a doubtful and ambiguous law the contemporaneous construction of those who are called upon to act under the law and were appointed to carry its provisions into effect, is entitled to very great respect." Hoffman v. County Commissioners, 3 Okla. 325, 41 Pac. 566.

While "the courts are bound to construe all laws coming before them according to their own judicial views, yet the practical construction put upon an act by the governmental officers charged with its execution ought not to be disregarded." So. McAlester-Eufaula Telephone Co. v. State, 25 Okla. 524, 106 Pac. 962.

In McMichael v. Murphy, 197 U. S. 304, 25 Sup. Ct. 460, 49 L. Ed. 766. it is said:

"It is our duty not to overrule the construction of a statute upon which the land department has uniformly proceeded, in its administration of the public lands, except for cogent reasons."

See, also, 32 Cyc. 1023.

It is insisted, however, that the allottee in the instant case was without authority to execute the conveyance in question by reason of the following provision of an act of Congress of April 26, 1906 (34 Stat. L. 137) :

"Sec. 19. That no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek or Seminole tribes shall have power to alienate, sell, dispose of, or incumber in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of this act, unless such restriction shall, prior to the expiration of. said period, be removed by act of Congress; and for all purposes the quantum of Indian blood possessed by any member of said tribe shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior. * * *"

We are unable to agree with this contention. In our opinion the language employed is not sufficiently comprehensive to operate as a repeal of the provisions of the acts of 1898 and 1903, supra, or in itself to impose an absolute restraint upon the sale of timber by allottees of the Five Civilized Tribes.

It is a matter of common knowledge of which the courts may properly take notice that members of the Five Civilized Tribes since receiving their allotments have in numerous instances, with the apparent sanction of the officers of the Department of the Interior, disposed of the growing timber thereon to persons who, relying in good faith upon the foregoing departmental construction of the controlling congressional legislation, have invested vast sums in the purchase of such timber and in the construction and maintenance of mills, railroads, tramways, and other equipment necessary and incident to the cutting and manufacture of such timber into lumber and other commodities. In the absence of clear and explicit inhibition against such transactions we are not disposed to place an interpretation upon such acts at variance with that of the Interior Department and thereby strike at the heart of one of the great industries of the state. We therefore conclude that the allottee had the capacity to execute the conveyance in question.

By striking the words, "until the," from the conveyance, it was the obvious purpose of the parties thereto not to fix any definite term within which the grantee therein might enter upon the premises and cut and remove the timber therefrom. Such being the case, the conveyance in question was that of

a terminable estate in the timber, which would cease when a reasonable time for the removal of such timber after the date of the execution of such conveyance had expired. Liston v. Chapman & Dewey Land Co., 77 Ark. 116, 91 S. W. 27; McRae v. Stillwell, 111 Ga. 65, 36 S. E. 604, 55 L. R. A. 513; Houston Oil Co. v. Boykin (Tex. Civ. App.) 153 S. W. 1176.

It is here contended by the plaintiff that a reasonable time for the cutting and removal of the timber in question had expired when this action was instituted.

In Liston v. Chapman & Dewey Land Co., supra, it is said:

"What is a reasonable time is generally a mixed question of law and fact. The facts are to be ascertained by an inquiry into the conditions of the land and timber, the obstacles opposing, and the facilities favoring, and the conditions surrounding the parties at the time the contract was made. When all the circumstances are considered, and the facts are determined, the law will declare whether reasonable time has expired for cutting and removing the timber conveyed. Carson v. Lumber Co. (108 Tenn. 681, 69 S. W. 320), supra. No fixed rules can be established for ascertaining what is a reasonable time. The facts and circumstances of each particular case must determine this."

It nowhere appears in the pleadings by particular facts or circumstances alleged what was a reasonable time for cutting and removing the timber so conveyed; and we are unable to say as a matter of law, in the absence of either pleading or proof relative thereto, that the eight years which had expired between the making of the conveyance and the commencement of the action afforded such reasonable time, and that the failure of defendant to avail itself of its privileges in that respect within that period authorizes the cancellation of the instrument and forfeiture of all rights thereunder.

The judgment of the trial court should be reversed, and the cause remanded, with directions to permit such amendment of the pleadings as the parties may desire to make.

By the Court: It is so ordered.