New River Lbr. Co. v. Blue Ridge Lbr. Co.

NEW RIVER LUMBER CO. *v.* BLUE RIDGE LUMBER CO.[*]

(*Knoxville.* September Term, 1921.)

1. **LOGS AND LOGGING.** Standing trees are part of realty, and do not partake of the charater of emblements or fructus industriales.

Standing trees are a part of the realty, and, inasmuch as they are the natural and permanent growth of the soil, they cannot be regarded as emblements or *fructus industriales*, and therefore a sale conveyance, or mortgage of land carries with it the trees growing thereon, and they cannot be levied upon or sold as chattels while standing, but lose such character by being severed from the realty. (*Post, p.* 195.)

2. **FRAUDS, STATUTE OF.** Logs and Logging. Standing timber can only be conveyed by written instrument complying with the statute of frauds.

A sale of standing timber is a sale of an interest in land, and hence a deed therefor is controlled by the rules governing deeds for realty, and the title thereto can be conveyed or transferred only by a written instrument complying with the statute of frauds. . (*Post, p.* 195.)

Case cited and approved: Childers v. Coleman, 122 Tenn., 109.

Case cited and distinguished: Galloway-Pease Co. v. Sabin, 130 Tenn., 578.

3. **LOGS AND LOGGING.** Standing timber may be transferred by deed, grant, or reservation and may constitute an estate separate from the land.

Standing timber may be transferred by deed, grant, or reservation, and may constitute an estate separate from the land, and, when so separated, it retains its character so long as it remains, uncut,

---

[*]As to whether timber sold or reserved without specifying time for removal be removed within reasonable time, see note in 46 (L. R. A. (N. S.) 672.

On the question as to whether a purchase of standing timber to be removed within a specified period of years is a purchase of realty of personalty, see note in 13 L. R. A. (N. S.) 278,

New River Lbr. Co. v. Blue Ridge Lbr. Co.

but when severed it becomes personal property. (*Post, pp.* 195, 196.)

4. **LOGS AND LOGGING.** Fee-simple title may be had in trees apart from title to land.

There may be different ownership in land and timber upon it and the fact of diverse ownership does not change the character of timber as real estate until actually severed, so that a fee-simple title can be made in trees as well as in land. (*Post, p.* 196).

5. **LOGS AND LOGGING.** Parties may contract that one have perpetual right to enter upon other's land and remove timber.

Parties may make a contract whereby one will be entitled to a perpetual right to enter upon land of another and remove timber therefrom if the intention is made clearly to appear. (*Post, p.* 196.)

6. **LOGS AND LOGGING.** One's perpetual right to enter another's

Where one party has a perpetual right to enter upon another's land to remove timber is primarily a question of intention. (*Post, pp.* 196, 197.)

Case cited and approved: Hicks v. Phillips, 146 Ky., 305.

7. **LOGS AND LOGGING.** Deed to timber construed as giving purchaser right to enter lands to cut and remove trees at pleasure or convenience.

A deed to timber apart from ownership of the land construed in the light of the situation, circumstances, and surroundings of the parties at the time of its execution, *held* to give a right in perpetuity in the trees therein described, and to give purchaser an unrestricted right to enter the lands and cut and remove the trees at pleasure or convenience, inasmuch as the contract gave the right to cut and remove "at any time," and warranted title to the trees. (*Post, pp.* 197, 202.)

Cases cited and approved: Goodson v. Stewart, 154 Ala., 660; Oates v. Yeargin, 115 S. W., 794; Ferguson v. Arthur, 128 Mich., 297; Mitchell-Crittenden Tie Co. v. Crawford, 61 Okla., 191; Hoit v. Stratton Mills, 54 N. H., 109; Berry v. Marion County Lbr. Co., 108 S. C., 108; Houston Oil Co. v. Boykin, 109 Tex., 276; Deerfield Lbr. Co. v. Lyman, 89 Vt., 201; Adams v. Hazen, 123 Va., 304;

New River Lbr. Co. v. Blue Ridge Lbr. Co.

Johnson v. Powhatan Mineral Co., 127 Va., 352; Liston v. Chapman & D. Land Co., 77 Ark., 116; Hall v. Wellman Lbr. Co., 78 Ark., 408; Carson v. Lbr. Co., 108 Tenn., 681; Butterfield Lbr. Co. v. Guy, 92 Miss., 361; Forest Product & Mfg. Co. v. Buckley. 107 Miss., 897; Cobban Realty Co. v. Donlan, 51 Mont., 58; Jones v. Lodwick Lbr. Co., S. W., 736; France v. Deep River Logging Co., 79 Wash., 336; Houston Oil Co. v. Hamilton, 109 Tex., 270; Wilson Lbr. Co. v. Alderman, 80 S. C., 106; Putnam v. Tuttle, 10 Gray (Mass.), 48.

Cases cited and distinguished: North Georgia Co. v. Bebee, 128 Ga., 563; Baker v. Kenney, 145 Iowa, 638; Lodwick Lbr. Co. v. Taylor, 100 Tex., 270; Chapman v. Dearman, 181 S. W. 808.

8. **LOGS AND LOGGING.** Court may look to circumstances surrounding the parties to determine time in which grantee may remove timber.

In interpreting the language of a deed to trees standing upon land, it is competent to look to the surroundings of the parties, the circumstances attending its execution and delivery and, if necessary, to vendee's refusal to accept the deed as originally written, because limiting time for removal of trees to three years, to determine whether a perpetual right to enter and remove was given. (*Post, pp.* 202, 203.)

9. **EVIDENCE.** Evidence as to time purchaser had to remove timber held not to contradict terms of deed.

Where a deed provided that the grantee might enter the land at any time to remove the timber, evidence of circumstances attendant upon the execution of the deed showing the intention as to time of removal, *held*, not to contradict or vary the terms of the deed, but consistent with its terms and confirmatory thereof. (*Post, pp.* 202, 203.)

Case cited and approved: Gholson v. Finney, 46 S. W., 345.

10. **REFORMATION OF INSTRUMENTS.** Bill of complaint and facts held to warrant reformation of deed for timber; it not effecting parties' intention.

In a suit involving title to and the right to cut and remove certain standing timber, if the language of the deed as written was not sufficient to effect the contract according to the clear intention of the

New River Lbr. Co. v. Blue Ridge Lbr. Co.

parties, *held*, that under the amended bill and facts proven, complainant would have been entitled to have the deed reformed so as to express the real contract on the ground of mistake, the evidence showing that the intention of grantors was to give grantee free and unrestricted to remove the timber. (*Post, pp.* 203, 204.)

Case cited and approved: Pittsburg Lbr. Co. v. Shell, 136 Tenn., 466; Dinwiddie v. Self, 145 Ill., 290.

11. **APPEAL AND ERROR.** Granting request to hold up decision for reply to supplemental brief is unnecessary, where the latter is not relied upon by the court.

Granting request of counsel to hold up decision until counsel could have time to reply to the last supplemental brief of complainant's counsel is unnecessary, where the decision is not based on anything presented in such supplemental brief. (*Post, p.* 204.)

·FROM ANDERSON.

Appeal from the Chancery Court of Anderson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. JOHN JENNINGS, JR., Chancellor.

E. G. FOSTER and CATES, SMITH & TATE, for appellants.

FOWLER & FOWLER and JOHN W. CREEKMORE, for appellees.

MR. JUSTICE HALL delivered the opinion of the Court.

This suit involves the title to and the right to cut and remove certain standing timber from two tracts of mountain land situated in Anderson county, Tenn.

The material facts which are necessary to be stated in determining the issues presented, and which facts are either admitted or established by the clear preponderance of the evidence, are as follows:

New River Lbr. Co. v. Blue Ridge Lbr. Co.

For some years prior to 1901, F. G. Norcross, C. P. Russell, and H. A. Buttric had been engaged as partners in the manufacture of lumber under the name of New River Lumber Company, with their principal place of business located at New river, in Scott county, Tenn., on the Cincinnati-Southern Railway. This firm owned a small sawmill originally having a sawing capacity of about three million feet of lumber per year, but in 1901 was nearly worn out. The firm also owned in fee about two thousand acres of timber land, and had purchased standing timber on other lands for the purpose of securing timber therefrom for future use in their operations, and also bought logs from whomsoever accessible to New river and its tributaries for the purpose of sawing them into lumber.

In 1901 Morton Butler of Chicago and his associates became interested in timber lands in Scott county, and purchased the properties and business of the New River Lumber Company, and caused the same to be transferred to the New River Lumber Company, Inc., a corporation chartered and organized under the laws of West Virginia, and of which the said Butler and his associates were the principal stockholders.

Mr. Butler was president of this corporation, and Mr. Norcross was its superintendent. Both Butler and Norcross were experienced timber and lumber men, and both of them were acquainted with the large bodies of timber lands then undeveloped lying in Scott county, or partly in the counties of Scott, Campbell, and Anderson, and the proof shows that it was their policy, where they could do so, to buy either timber lands in fee or standing timber in fee, with the absolute and unrestricted right of removal, in order to secure the benefit of the future growth of such timber, and for the future supply of the company's large mill which they intended to erect and operate.

In 1903 the New River Lumber Company, Inc., owned between fifty million and sixty million feet of standing timber on several thousand acres of timber land in fee, and, following its well-defined policy, the company continued to acquire additional timber lands, either in fee or the standing timber on same, with the absolute and unrestricted right of removal at any time such timber might be needed in the company's operations.

In 1903 C. J. Sawyer, Miss Ida Hornsby, Mrs. Sallie M. Doyle, and J. A. Fowler were the owners in fee of what was known as the Smith entry, then lying partly in the Tenth civil district of Anderson county and partly in the Fourteenth civil district of Campbell county, covering what are referred to in the record as the Beech fork and the Elijah fork of New River, and what is known as Red Oak Mountain, lying between said Beech and Elijah forks.

In 1903 Butler and Norcross, representing the New River Lumber Company, Inc., entered into negotiations with Mr. Sawyer and his associates for the purchase of certain timber standing on the Smith entry. These negotiations were carried on principally with Mr. Sawyer, but to some extent with Mr. Fowler. Finally, the price being agreed on, the timber was counted in the spring of 1903 by representatives of both parties, and marked with what it called a square forty, thus (#)—the mark of the New River Lumber Company for standing timber; and there were thus counted and marked on the land tributary to Beech fork of New river four thousand two hundred and thirty-five trees and on the land tributary to Elijah's fork one thousand four hundred and sixty-five trees.

It appears that Mr. Sawyer, who was then a lawyer living at Clinton, in Anderson county, and had been rep-

resenting the New River Lumber Company as its attorney, knew that its policy was to buy standing timber outright, with an unrestricted right of removal, and had, for said company, prepared various deeds to be executed by others to carry said policy into effect.

The deed for the timber so purchased by the New River Lumber Company was to be prepared by Messrs. Fowler and Sawyer (both of whom were lawyers) for themselves and associates, and it was agreed that Messrs. Butler and Norcross, representing the New River Lumber Company, and Messrs. Sawyer and Fowler, representing themselves and their associates, should meet in Harriman, Tenn., on a date agreed upon, for the purpose of delivering the deed to said timber so purchased, and receive payment therefor.

The deed was prepared by Mr. Fowler, who lived at Knoxville, Tenn., in Knoxville, and was there executed by himself, Miss Hornsby and Mrs. Doyle, and purported to be a conveyance to F. G. Norcross, as trustee for the New River Lumber Company, Inc., and contained a provision to the effect that said "Norcross has three years from this date within which to cut and remove said timber," etc.

When said deed, as originally prepared, was presented for delivery to the representatives of the New River Lumber Company, Inc., at Harriman, both Butler and Norcross refused to accept the same, and told Messrs. Sawyer and Fowler it should have been drawn, conveying the property direct to the New River Lumber Company, Inc., and further that they would not accept the deed containing any restrictions upon the company's right of removal of said timber—that they would not buy the timber otherwise than in perpetuity with the unlimited right of removal, so that

the company could take and use said timber at any time it desired.

Thereupon Messrs. Fowler and Sawyer informed Butler and Norcross that they wanted to close the deal for said timber, and that they had authority from their associates to make any necessary changes in the deed and were willing to do so. Thereupon the deed, as prepared by Mr. Fowler, was changed and amended by Mr. Sawyer, as stated by him at the time, so as to meet the demands of the officers and representatives of the New River Lumber Company, Inc. This correction and amendment was made by striking out certain clauses on the face of the deed, to wit:

(a) Making the vendee the New River Lumber Company, Inc., instead of Norcross, trustee; (b) by striking out the clause "has three years from this date within which," and inserting in lieu thereof the words "has the right," and also inserting the words "tracts" and "and" the words "at any time," so that the clause thus amended would read, "has the right to cut and remove said timber from both of said tracts at any time."

Thereupon the said deed was signed and acknowledged by Mr. Sawyer, delivered by him to Mr. Butler, who paid to said Sawyer the full amount of the purchase price for said timber, and Mr. Sawyer was requested by Mr. Butler to carry the deed to Clinton, and there have it recorded, which Mr. Sawyer did.

The material provisions of the deed, after the same had been altered in the particulars hereinbefore mentioned, are as follows:

"That the said parties of the first part [C. J. Sawyer and his associates] for and in consideration of the sum

of one dollar ($1) and other valuable considerations to them cash in hand paid by the said party of the second part [the New River Lumber Company, Inc.], the receipt of which is hereby acknowledged, have granted, bargained, sold and conveyed and do hereby grant, bargain, sell and convey unto the said party of the second part, the following number and varieties of trees, to wit:

"Poplar, sixteen to twenty-four inches in diameter, one thousand four hundred and twenty; poplar, twenty-four inches and over, six hundred and forty-three; chestnut, sixteen inches and over, two thousand eight hundred and forty; lynn, sixteen inches and over, ash, sixteen to twenty-four inches, one hundred and eleven; ash, twenty-four inches and above, fifteen; cherries, fifty-two; walnut one; all of which trees were during the months of March and April, 1903, counted and branded with the brand of the New River Lumber Company, thus (#) by Frank Cross, representing the parties of the first part, and William Mumford, representing the party of the second part, and all situated upon and within the boundaries of the following tract of land.

"[Then follows specific description of land upon which timber is situated.]

"It is understood that the said New River Lumber Company, Inc., has the right to cut and remove said timber from both of said tracts, at any time, and in cutting and handling the same it or their agents or assigns of their assigns and their agents, shall exercise reasonable care not to destroy or injure the remaining timber standing on said premises. Said parties of the first part also convey all the necessary rights of way and other easements for the cutting and removal of said timber over the above-de-

scribed lands, except over such parts of the surface thereof as belongs to other parties than those of the first part in this instrument, a statement of which exceptions has heretofore been given to the party of the second part or his agents; lumber camps and a sufficient amount of small timber to build said camps, stables and necessary tram roads and maintain same, with the hereditaments and appurtenances thereto appertaining.

"To have and to hold said trees and right of way to the said party of the second part, his heirs and assigns forever.

"And the said parties of the first part for themselves and for their heirs, executors and administrators, do hereby covenant with the said party of the second part, his heirs and assigns, that they are lawfully seized in fee simple of the trees above conveyed and have full power, authority and right to convey the same, that said trees are free from all incumbrances, and that they will forever warrant and defend the said trees and the title thereto against the lawful claims of all persons whomsoever."

The original deed, which is dated May 23, 1903, but was delivered on May 25, 1903, is filed as Exhibit A to the original bill, and was sent up with the record and shows the changes and interlineations hereinbefore referred to.

After the delivery of this deed on May 23, 1903, ownership by the New River Lumber Company, Inc., of said timber conveyed in said deed was never disputed by Sawyer and Fowler and their associates, nor was it ever claimed either by Sawyer and Fowler and their associates, or their vendee, to whom they subsequently conveyed the lands upon which said timber was situated, that the New River

Lumber Company's right to remove said timber was in any way restricted until the year 1911, when Mr. Sawyer, acting for the Red Oak Coal Company, to whom said lands were conveyed by Sawyer and Fowler and their associates on June 22, 1906, addressed a letter or notice to the New River Lumber Company, Inc., stating, in substance, that as no time for the removal of the timber had been specified in said deed of May 23, 1903, it must be removed within a reasonable time, and that the Red Oak Coal Company thought it had had a reasonable time in which to cut and remove said timber, and stated that the timber branded should be removed from the land, and notified the New River Lumber Company to proceed to cut and remove the same.

The deed from Fowler and Sawyer and their associates to the Red Oak Coal Company specifically excepted from its operation or effect all of said timber theretofore sold by them to the New River Lumber Company, Inc., which had theretofore been marked and branded.

Since the execution of said deed of May 23, 1903, the New River Lumber Company, Inc., has acquired large areas of timber lands, among which is a tract known as the L. Bird lands containing something like fifty-five thousand acres, and having thereon about five hundred million feet of timber, and has erected a very large mill with a capacity of something like twenty-five million feet *per annum.*

In 1907, the New River Lumber Company was chartered and organized under the laws of the State of Ohio, and it purchased and took over all of the properties of the New River Lumber Company, Inc., including the rights of the New River Lumber Company, Inc., in the timber purchased from Fowler and Sawyer and their associates, and is

now engaged in conducting the lumber operations formerly conducted by the New River Lumber Company, Inc.

On December 24, 1919, the Red Oak Coal Company, who purchased the lands known as the Smith entry from Fowler and Sawyer and their associates in 1906, undertook to convey to the defendant, Blue Ridge Lumber Company, all the timber situated on the Smith entry, including the timber involved in this litigation. This conveyance from the Red Oak Coal Company was accepted by the Blue Ridge Lumber Company with full knowledge that the timber involved was marked with the timber mark of complainant, and that complainant claimed to own said marked timber, and that the same had been expressly excepted from the deed of Sawyer and Fowler and their associates to said Red Oak Coal Company, and the Red Oak Coal Company executed to the Blue Ridge Lumber Company a bond in the penalty of $10,000 to secure it against loss or damage on account of the claim of the New River Lumber Company.

Whereupon the Blue Ridge Lumber Company began cutting and removing said timber, and the present bill was filed on April 15, 1920, by the New River Lumber Company for the purpose of setting up title in it to said timber by virtue of said deed of May 23, 1903, which it insists vested it with the title to said trees, with the perpetual and unrestricted right to enter upon said lands and cut and remove said marked timber therefrom.

The bill prayed that the deed from the Red Oak Coal Company to defendant, dated December 24, 1919, be canceled as a cloud on complainant's title, and that defendant be enjoined from further cutting and removing said timber, and that it be required to account to complainant for

New River Lbr. Co. v. Blue Ridge Lbr. Co.

the value of such of said timber as had already been cut and removed from said lands, belonging to complainant.

· By way of amendment to its bill complainant asked that if said deed of May 23, 1903, as written, could not be construed as vesting in it the absolute title to said marked timber, with the unrestricted right to enter upon said lands and cut and remove it at its pleasure, then that it be so reformed as to give it such right, as such was clearly the contract and understanding between the parties.

The defendant answered the bill and amendment, setting up its title to said timber, and claiming under its deed from the Red Oak Coal Company of December 24, 1919.

Its answer averred that the deed by which complainant acquired said trees, properly interpreted, only gave it a reasonable time in which to cut and remove said timber from said lands, and that such reasonable time had expired.

It further averred the notice given by the Red Oak Coal Company to complainant to cut and remove said timber in July, 1911, and averred that complainant had only a reasonable time from that date to cut and remove said timber; that by its laches and neglect it had led the officers of the Red Oak Coal Company to believe that it had abandoned its claim to said timber; that it had, in fact, abandoned its claim to said timber; and that the title thereto had reverted to the owner of the soil, which reversion inured to defendant under its deed from the Red Oak Coal Company of December 24, 1919.

The answer further denied that, by the conveyance from Fowler and Sawyer and their associates of May 23, 1903, it was intended to create in complainant, or its predecessors in title, an estate in perpetuity in said timber; that

146 Tenn.—13

the rights of complainant in said timber could only be determined from the language contained in the deed of May 23, 1903, when considered in the light of the circumstances, conditions, and surroundings of the parties existing at the time of its execution. The answer also set up the defense that defendant was an innocent purchaser of said timber in good faith and for a valuable consideration, and without notice.

Upon the hearing the chancellor decreed that under the deed of May 23, 1903, the New River Lumber Company, Inc., the predecessor in title of complainant, when said deed is interpreted in the light of the situation of the parties, the circumstances, and their surroundings at the time of its execution, became vested with the absolute ownership of said timber without restriction upon its right to remove the same at its pleasure, and therefore complainant was entitled to recover said timber of the defendant, Blue Ridge Lumber Company, and to have the claim of that company thereto canceled as a cloud upon complainant's title, and it was accordingly decreed.

From this decree the defendant, Blue Ridge Lumber Company, appealed to the court of civil appeals. That court reversed the decree of the chancellor, and held that, under the deed of May 23, 1903, the New River Lumber Company, Inc., had only a reasonable time in which to remove said timber, after it was notified so to do by the Red Oak Coal Company in July, 1911, and, having failed to remove said timber within a reasonable time after said notice, its right and title to said timber became forfeited and ceased. Complainant's bill was therefore dismissed, and the cause is now before this court upon complainant's petition for writ of *certiorari* and for review.

It is unnecessary to set out or state the substance of the many assignments of error filed by complainant to the action of the court of civil appeals. It suffices to say that they all relate to the action of the court of civil appeals in holding that complainant was not the absolute owner of said timber under the deed of May 23, 1903, and had the absolute and unrestricted right of removal of said timber at any time it saw proper. In other words, that the court of civil appeals erred in not holding that it was vested with the right to hold said timber in perpetuity, but only had a reasonable time after it received notice from the Red Oak Coal Company in 1911 to cut and remove said timber; and in holding that it had had such reasonable time, and having failed to remove said timber within such time, had forfeited its rights to the same. This is the vital and material question in the cause.

The rule is well established in this State and elsewhere that standing trees must be regarded as part of the realty on which they stand; and, inasmuch as they are the natural and permanent growth of the soil they cannot be regarded as partaking of the character of emblements or *fructus industriales,* and therefore a sale, conveyance, or mortgage of land carries with it the trees growing upon the land. They cannot be levied upon or sold as chattels while standing, but trees as soon as they are severed from the land lose their character as realty and become personalty. R. C. L., vol. 17, section 3, p. 1067.

In *Galloway-Pease Co.* v. *Sabin,* 130 Tenn., 578, 172 S. W., 292, 293, it was said:

"A sale of standing timber is a sale of an interest in land, and hence a deed therefor is controlled by the rule that governs deeds for realty"--citing *Childers* v. *Coleman,* 122 Tenn., 109, 118 S. W., 1018.

The rule established in most jurisdictions is that grow-
ing trees are a part of the land, and that the title to or
interest in the same can be conveyed or transferred only
by a written instrument, complying with the statute of
frauds, and this is said to be true whether or not the par-
ties contemplate their immediate severance and removal
by the vendee. R. C. L., vol. 17, section 5, p. 1070.

It is generally recognized that standing timber may be
transferred by a deed, grant or reservation, and constitute
an estate separate from the land itself. When so separat-
ed it retains its character so long as it remains uncut, but
when severed it becomes personal property.

In R. C. L., vol. 17, sec. 11, p. 1080, it is said: "It is
recognized that there may be different ownerships in real
estate, according to its different characters, as for example
the trees and the land, and the fact of diverse ownership
does not change the character of timber as real estate until
actually severed. This being the case, a fee-simple title
can be made in one character of real estate as well as an-
other, and it is as lawful and binding to make a fee-simple
title to the trees forming a part of the land as to make a
deed to the entire real estate, including the land, and to
keep thereby the two estates perpetually separate."

The rule is well established that the parties to an agree-
ment may, if they choose, make a contract whereby one will
be entitled to a perpetual right to enter upon the land of
the other and remove timber therefrom, if the intention
is made clearly to appear. R. C. L., vol. 17, section 12, p.
1082; 3 British Ruling Cases, p. 874, note.

Considerable conflict of opinion has developed in case
of contracts of sale in which no time for removal is stated
as to whether an estate in fee simple is conveyed in the

trees, or an estate determinable by a failure to remove within a reasonable time. Primarily, this is a question of intention. *Hicks* v. *Phillips,* 146 Ky., 305, 142 S. W., 394, 47 L. R. A. (N. S.), 878.

In a number of cases where the contract was silent as to the time in which the timber should be removed it was held that the purchaser had only a reasonable time in which to effect its removal. *Goodson* v. *Stewart,* 154 Ala., 660, 46 South., 239; *Oates* v. *Yeargin* (Ky.), 115 S. W., 794; *Ferguson* v. *Arthur,* 128 Mich., 297, 87 N. W., 259; *Mitchell-Crittenden Tie Co.* v. *Crawford,* 61 Okla., 191, 160 Pac., 917; *Hoit* v. *Stratton Mills,* 54 N. H., 109, 20 Am. Rep., 119; *Berry* v. *Marion County Lumber Co.,* 108 S. C., 108, 93 S. E., 328, Ann. Cas., 1918E, 77; *Houston Oil Co.* v. *Boykin,* 109 Tex., 276, 206 S. W., 815; *Deerfield Lumber Co.* v. *Lyman,* 89 Vt., 201, 94 Atl., 837; *Adams* v. *Hazen,* 123 Va., 304, 96 S. E., 741; *Johnson* v. *Powhatan Mineral Co.,* 127 Va., 352, 103 S. E., 703; *Liston* v. *Chapman & D. Land Co.,* 77 Ark., 116, 91 S. W., 27; *Hall* v. *Wellman Lumber Co.,* 78 Ark., 408, 94 S. W., 43.

In our own case of *Carson* v. *Lumber Co.,* 108 Tenn., 681, 69 S. W., 320, it was held that, under a contract for sale of standing trees which contained no provision as to time for cutting and removing the same, the purchaser only had a reasonable time in which to enter upon the lands and cut and remove said timber.

A perpetual right of entry to cut and remove trees was held to have been created in *North Georgia Co.* v. *Bebee,* 128 Ga., 563, 57 S. E., 873, by a conveyance granting "unto the party of the second part, his heirs and assigns forever," the described trees, "together with the full and unreserved right of way over and through any and all the above de-

scribed lands, or any other lands that are now or may be hereafter owned or controlled by said party of the first part, for the manufacture or removal at any time of any and all timber of the party of the second part on said lands, . . . also the right to cut and use at any time all timber necessary for the manufacture or removal of said timber," and containing a provision, also, for the payment of damage to growing crops or lands in the manufacture and removing of such timber, and a general warranty to the parties of the second part, their heirs and assigns. The court in that case said:

"Where the owner of land grants the trees growing thereon to another and his heirs, with liberty to cut and carry them away at his pleasure forever, the grantee acquires an estate in fee in the trees, with an interest in the soil sufficient for their growth, while the fee in the soil itself remains in the grantor."

In *Baker* v. *Kenney*, 145 Iowa, 638, 124 N. W., 901, 139 Am. St. Rep., 456, the conveyance recited that—The grantor had "bargained and sold, and by these presents do grant and convey unto the said party of the second part, his executors, administrators, and assigns, all timber and growth of timber, . . . with privilege at all times to enter upon the above described lands for the purpose of cutting, and hauling timber therefrom, . . . to have and to hold the same unto the said party of the second part, his executors, administrators and assigns forever."

It was held that said conveyance was a grant in perpetuity of the right to take the timber. The conveyance in that case was headed "Bill of Sale," and a part of the description in the warranty was of "goods and chattels," and it was recorded in the chattel mortgage record.

In holding that a grant of timber conveyed an interest to the grantee which was not lost by failure to remove within a reasonable time, the court in *Butterfield Lumber Co. v. Guy*, 92 Miss., 361, 46 South., 78, 15 L. R. A. (N. S.), 1123, 131 Am. St. Rep., 540, relied largely upon the fact that, according to the law of that State, a sale and conveyance of timber is a sale of an interest in realty, and held that such conveyance vests an absolute title in the trees, independent of the land itself, and that such title is not lost or forfeited by failure to remove within a reasonable time. The Butterfield Case was approved and followed in *Forest Product & Mfg. Co. v. Buckley*, 107 Miss., 897, 66 South., 279.

In *Cobban Realty Co. v. Donlan*, 51 Mont., 58, 149 Pac., 484, the deed involved was in the ordinary form of a deed conveying real estate; it expressed a present consideration fully paid, its subject-matter was timber and growing trees, which were realty under the laws of the State, and it purported by appropriate language to convey this realty to the grantee, his heirs and assigns, forever. It was therefore held that it could not be claimed that the timber was to have been removed within a reasonable time.

In *Lodwick Lumber Co. v. Taylor*, 100 Tex., 270, 98 S. W., 238, 123 Am. St. Rep., 803, the conveyance, after reciting a consideration, continued:

"I have bargained, sold, and released unto the Hope Lumber Company, heirs and assigns, forever, in fee simple, the following described tract or parcel of land, to wit: All the timber on . . . and I do hereby bind myself, heirs, and legal representatives to warrant and forever defend, all and singular, the title to the above-mentioned premises unto the said Hope Lumber Company, heirs and assigns," etc.

The court said: "The deed unmistakably expresses the intention to convey the timber as an interest in the land on which it stood, and to convey it in fee simple and forever. It is a well settled proposition that trees may be so conveyed or reserved in a deed as to leave in one person a title in fee in the soil generally, and in another a like title in the timber. Where this is the case there goes with the title to the timber the right to the use of the soil for its sustenance and of entry upon the land for its enjoyment. Consequently no such limitation as that the timber must be removed within a reasonable time can be imported by construction into such a grant or reservation. The very terms of the deed, when it says the title is conveyed in fee simple forever, answer any question that might otherwise arise as to the nature and duration of the right granted."

This case is followed in *Jones* v. *Lodwick Lumber Co.* (Tex. Civ. App.), 99 S. W., 736, a case involving a similar contract.

In *Chapman* v. *Dearman* (Tex. Civ. App.) 181 S. W., 808, affirmed by the supreme court of Texas in 229 S. W., 1112, the deed recited that in consideration of a stated sum the grantors have granted, sold, and conveyed unto the purchasers all the timber situated on certain described lands, and the grantors further authorize and empower the purchasers, their heirs, assigns, and legal representatives, to enter upon the land, cut and remove the timber. The *habendum* clause was: "To have and to hold above described premises, together with all and singular the rights and appurtenances unto the said purchasers, their heirs and assigns, forever."

It was held that the purchaser under said deed had the unrestricted right of removal of the timber.

New River Lbr. Co. v. Blue Ridge Lbr. Co.

In *France* v. *Deep River Logging Co.,* 79 Wash., 336, 140 Pac., 361, Ann. Cas., 1916A, 238, it was held that a conveyance by the owner of land to the purchaser of "the right of entering upon said land and removing said timber and trees from the same at the pleasure of said grantee, his heirs, personal representatives and assigns . . . to have and to hold the said granted property and privileges to the said G. H. Mooers, his heirs, personal representatives and assigns forever," conveyed to the grantor a continuing, perpetual right, for all time, to enter upon the land and remove the timber.

In *Houston Oil Co.* v. *Hamilton,* 109 Tex., 270, 206 S. W., 817, the deed involved recited that in consideration of a stated sum the grantor bargained, sold, transferred, and delivered unto the grantee all the pine timber on the described tract of land, to have and to hold the timber, together with the right of way for the purpose of removing the timber, unto the said purchaser, "its successors and assigns, forever." The court, in construing said deed, says that this language admits of no other construction than as investing the purchaser with the right to have the described timber remain on the land until the purchaser or its assigns may elect to remove and appropriate the same.

In *Wilson Lumber Co.* v. *Alderman,* 80 S. C., 106, 61 S. E., 217, 128 Am. St. Rep., 865, it was held that a conveyance in fee simple, without conditions or limitations, of trees and timber suitable at the time for milling purposes, conveys an estate in the timber which is not lost by failure to remove it within a reasonable time.

In *Putnam* v. *Tuttle,* 10 Gray (Mass.), 48, it was held that a reservation of the wood and trees to the grantor and "his heirs, forever," reserved a title of inheritance to the wood and trees then on the tract indicated,

We are of the opinion that the deed under consideration, when construed in the light of the situation, circumstances and surroundings of the parties at the time of its execution, must be held to convey a right in perpetuity in the trees therein described, and that complainant has the unrestricted right to enter upon said lands and cut and remove said trees at its pleasure or convenience.* This case is not ruled by the case of *Carson* v. *Lumber Co.,* supra. In that case the contract was silent as to the time within which the timber should be removed. While in the deed under consideration it was expressly provided that the vendee should have the right to cut and remove the trees *at any time.* Furthermore, there was no warranty of title to the timber sold in the Carson Case, while in the deed under consideration there was an express covenant by the vendors that they would warrant and forever defend the title to the timber conveyed against the lawful claims of all persons whomsoever. Therefore, giving effect to the deed as it was written by the vendors themselves, and interpreting the words "at any time" according to their plain, natural, and literal meaning, the vendee was given an absolute and unrestricted right to cut and remove said timber at its pleasure.

In interpreting the language of said deed it is competent for the court to look to the surroundings of the parties, the circumstances attendant upon the execution and delivery of the deed, and what transpired at the time bearing on the fact of purchase. If necessary, we might look to the undisputed fact that the vendee refused to accept the deed as originally written by the vendors with the three years' limitation clause in it for the removal of the timber, and that thereupon said clause was stricken out of the

deed by the vendors and words inserted giving the vendee the right to cut and remove said timber at any time. This evidence does not tend to contradict or vary the terms of the deed, as insisted by counsel for defendant, and as held by the court of civil appeals. It is consistent with the terms of the deed and confirmatory thereof. 10 R. C. L., p. 1019; 22 C. J., p. 1144; *Gholson* v. *Finney* (Tenn. Ch.), 46 S. W., 345.

Furthermore, if the language of the deed as written were not sufficient to effect the contract according to the clear intention of the parties, then, under the amendment to the bill and the facts proven, complainant would be entitled to have the deed reformed so as to express the real contract which the parties entered into on the ground of mistake. From a consideration of the facts proven there can be no doubt, we think, that it was the intention of the grantors to give the grantee the free and unrestricted right of removal of the timber conveyed, and the extrinsic evidence offered by the plaintiff, which was excepted to by the defendant, and was admitted by the chancellor, but excluded by the court of civil appeals, was clearly admissible on the question of reformation. *Pittsburg Lumber Co.* v. *Shell,* 136 Tenn., 466, 189 S. W., 879.

Mr. Pomeroy, in his valuable work on Equity Jurisprudence (4th Ed.), vol. 2, section 845, on the subject of reformation of an instrument says:

"The first instance which I shall mention is closely connected with the doctrines stated in the last paragraph but one. It was there shown that if an agreement is what it was intended to be, equity would not interfere with it because the parties had mistaken its legal import and effect. If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, by

means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument."

Again, this eminent author, in vol. 5, sec. 2898, says:

"If . . . after making an agreement, in the process of reducing it to a written form, the instrument by means of a mistake of law, fails to express the contract which the parties actually entered into, equity may grant reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact."

To the same effect is the rule announced in 1 Elliott on Contracts, section 109, and in 23 R. C. L., p. 324 et seq. This rule is also announced in *Dinwiddie* v. *Self,* 145 Ill., 290, 33 N. E., 892.

Counsel for defendant made a request of the court to hold up its decision in this cause until he could have time to reply to the last supplemental brief of counsel for complainant.

This need not be done, as the court found it unnecessary to consider the supplemental brief of complainant, and has not done so. The decision is not based on anything presented in the supplemental brief of counsel for complainant.

It results that the judgment of the court of civil appeals will be reversed, and the decree of the chancellor affirmed.